283 So.2d 919 (1973)
Robert KEYS, Jr.
v.
STATE of Mississippi.
No. 47419.
Supreme Court of Mississippi.
October 15, 1973.
*920 Fielding L. Wright, Jr., Pascagoula, for appellant.
A.F. Summer, Atty. Gen., by T.E. Childs, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
This appeal came to this Court from the Circuit Court of Jackson County, Mississippi. Appellant Robert Keys, Jr. has appealed from a judgment convicting him of the crime of possession of marijuana. He was sentenced to serve a term of six (6) months in the Jackson County jail and to pay a fine of five hundred dollars ($500.00).
Appellant assigned only one point of error alleged to have occurred in the trial court. He charges that the trial court erred in admitting into evidence six (6) matchboxes of marijuana obtained by the officers during an illegal search, and in the failure of the court to grant defendant's motion to direct a verdict in favor of the defendant.
The record shows that on October 15, 1971, state's witness, Officer Wayne Howard, received a telephone call from an anonymous informer concerning possession of marijuana by the defendant. On the basis of the information received from this anonymous informer, Mr. Howard obtained a search warrant allowing a search of defendant's apartment. The officer proceeded to the defendant's house and, as he approached the house, Mr. Howard saw the defendant and two other people driving away in defendant's car. Officer Howard then followed defendant's car until he caught up with it and pulled defendant over about one mile from defendant's house. Officer Howard testified that he had followed the defendant in order to stop him and serve the search warrant. Officer Howard also testified that at the time he stopped the defendant, the defendant was breaking no laws, and he stopped the defendant merely to serve the warrant. After the defendant had stopped his car, Officer Howard ordered the occupants out of the car. During a "patdown" of the defendant, Officer Howard found three matchboxes containing a substance which was subsequently determined to be marijuana. Upon searching the interior of the defendant's automobile, three additional boxes of marijuana were found. The defendant was arrested and taken to the police station where he was charged with possession of marijuana. Defendant was not served with the search warrant until he reached the police station, and he was not arrested until after the officer had discovered the boxes of marijuana in his possession.
The appellant objected to the testimony of Officer Wayne Howard with reference to the search of the person of the defendant. The objection was overruled, and the testimony of the officers as to a "stop and frisk" situation was fully developed by the prosecution. At the end of the testimony offered by the state, the defendant Keys made a motion for a directed verdict. This motion was overruled. The defendant then took the witness stand in his own defense and testified that one E.J. Thomas wanted to catch a ride with him from Moss Point "back to home", and that after they reached his house, Thomas wanted to go to the bus station. The defendant said he noticed that Thomas had some matchboxes wrapped with a rubber band after they came out of the house to carry Thomas to the bus station. Ernestine, his female companion, noticed the matchboxes on the front seat, and defendant put two of them in his pocket. He testified that the officers drove up behind him, and when he stopped the car, the officers made him get out of the automobile and put his hands on the top of the automobile; thereupon, the officers *921 searched him and discovered the matchboxes. Defendant was then arrested, and taken to the police headquarters. The search warrant was later served upon the defendant.
It seems that it is an unending task of this Court to repeatedly remind law enforcement officers that they have no authority to search the person of an individual because they may suspect that he is violating the law, or because they are desirous of physically searching the person of an individual to see if he has in his possession contraband so that he may be arrested and prosecuted. A physical search of a person is not only a violation of the freedom of a citizen, but it has sometimes been used as a method of actually violating the body of a person. See Robinson v. State, 143 Miss. 247, 108 So. 903 (1926).
In Smith v. State, 240 Miss. 738, 128 So.2d 857 (1961), we pointed out that the purpose of a search of a prisoner after he has been arrested is to take charge of weapons, evidence of crime, and tools that may be used as a means of escape. In Smith, we said:
"Our Court has made it very clear in the case of Lewis v. State, 198 Miss. 767, 23 So.2d 401, that, where a sheriff has no warrant for arrest of a defendant and the defendant had not committed any crime in the sheriff's presence, the arrest of the defendant was illegal, and evidence obtained by a search of her person as an incident to the arrest was inadmissible. See also Pettis v. State, 209 Miss. 726, 48 So.2d 355. A search in violation of the rule of `probable cause for arrest' is a violation of a citizen's fundamental rights. Myers v. State, 158 Miss. 554, 130 So. 741." 240 Miiss. at 744-745, 128 So.2d at 860.
In the instant case, the arresting officers contended that "patting down" the defendant was not a search of his person. Their theory seems to be that they merely "frisked him", and they seem to believe that they had the right to do so without arresting him. We trust we will be understood when we say to "pat down" is to search a person, and an officer has no authority to search a person unless he is under arrest by authority of a warrant or for probable cause. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In Reed v. State, 199 So.2d 803 (Miss. 1967) an officer testified that he could very distinctly see the imprint of a gun in the right hip pocket of the defendant. Indeed, a search of defendant's person revealed that the object in defendant's hip pocket was a pistol. On an appeal from a conviction for carrying a concealed weapon, this Court held that the officer had authority to arrest the defendant and said:
"Where through the senses of sight, or smell, or hearing, the officer receives knowledge that an offense is being committed in his presence, he may arrest the offender without a warrant." 199 So.2d at 808.
In support of this proposition, we cited Daniels v. City of Gulfport, 146 Miss. 517, 112 So. 686 (1927). These cases, however, do not mean that the officers have authority to "stop and frisk" without probable cause for arrest. The authority to search an individual is based upon the authority of the officer to arrest the defendant. If the officer does not have the authority to make an arrest, he has no right to search the individual. Moreover, if he had no authority to arrest the defendant, evidence obtained by an illegal search cannot be used against the person illegally searched. Canning v. State, 226 So.2d 747 (Miss. 1969); Lewis v. State 198 Miss. 767, 23 So.2d 401 (1945).
The search of the appellant was clearly an illegal search, and the contraband obtained as a result of the illegal search was inadmissible in evidence. The trial court should have granted a directed verdict at the close of the state's testimony, *922 since the only testimony offered was illegally obtained.
This brings us to the real problem in this case.
We have held for many years that one may waive his constitutional objection to illegally obtained evidence by admitting his guilt of the charge by his own testimony.
There is a tremendous body of law in this state which indicates that the error of introducing improper evidence is cured by the defendant's admission in substance, the truth of everything which could have been proved by the evidence if it were admissible. That is to say, if evidence derived from an unlawful search is improperly introduced into evidence, there is no error if the defendant freely and voluntarily admits to having possessed the contraband obtained as a result of the search.
In Goodman v. State, 158 Miss. 269, 130 So. 285 (1930), police officers conducted a warrantless search of defendant's person for intoxicating liquors. The search was supposedly incident to a lawful arrest, but the testimony presented tended to indicate that the officers lacked the probable cause to stop defendant's automobile and to conduct the search. In affirming the decision of the circuit court, Chief Justice Smith pointed out in his opinion that:
"It is not clear from the evidence whether the person of the appellant was searched before or after his arrest; in fact, it is not clear from the evidence that he was then arrested at all. If he was not then under arrest, the officers had no right to search his person, and, the evidence thereby obtained was inadmissible; but any error that may have been committed in the admission of this evidence cannot be here complained of by the appellant, for he testified in his own behalf and admitted that he had the bottle of whisky then in his possession. Blowe v. State, 130 Miss. 112, 93 So. 577, 24 A.L.R. 1429; State v. Watson, 133 Miss. 796, 98 So. 241; Bowman v. State, 152 Miss. 195, 119 So. 176." 158 Miss. at 274, 130 So. at 286.
Similarly, in Bowman v. State, 152 Miss. 195, 119 So. 176 (1928), this Court held:
"A defendant is not injured by evidence procured against him by an unlawful search and seizure, where he goes upon the witness stand in his own behalf and admits the facts revealed by such evidence. He is not harmed by such evidence, and therefore has no right to complain. In so voluntarily testifying, he waives the illegality of the search and seizure. Blowe v. State, 130 Miss. 112, 93 So. 577, 24 A.L.R. 1429." 152 Miss. at 200-201, 119 So. at 177.
The prevailing viewpoint of this Court is likewise represented by the following excerpts from other cases in point:
"Since the search in this case was unlawful and all of the testimony upon which a conviction was sought was a result of this search, the motion to exclude the testimony of the state should have been sustained. The testimony of the state, in brief, was to the effect that the officers found certain vessels containing liquor in the home of the defendant. The defendant, however, testified in his own behalf, admitted the finding of the liquor in his house, but stated it was the property of some one else. This testimony of the defendant rendered harmless the admission of the incompetent testimony for the state. Blowe v. State, 130 Miss. 112, 93 So. 577, 24 A.L.R. 1429." State v. Watson, 133 Miss. 796 at 800, 98 So. 241 at 242 (1923).
* * * * * *
"On the trial of appellant the evidence obtained against him by virtue of the search of his home without a search warrant was used over his objection, and this action of the court is assigned as error. Clearly under Tucker v. State, supra, [128 Miss. 211, 90 So.2d 845,] and the cases following it, this evidence was incompetent; however under the facts *923 of this case its admission was without harm to appellant, because he voluntarily went on the witness stand in his own behalf, and admitted the only fact which the state had been enabled to prove by virtue of the illegal search of his home, namely, his possession of the goods alleged to have been stolen." Blowe v. State, 130 Miss. 112 at 118, 93 So. 577, at 578 (1922).
The foregoing cases were decided before the United States Supreme Court held that the first eight amendments to the United States Constitution were made applicable to the various states by operation of the due process clause of the Fourteenth Amendment to the United States Constitution. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
Most recently, in Gann v. State, 234 So.2d 627 (Miss. 1970), this Court reaffirmed its acceptance of the above stated rule which has been called the "doctrine of curative admissibility". 5A C.J.S. Appeal and Error § 1724(b), at 954 n. 6 (1958).
First, we consider the facts in the Gann case. An agent of the Mississippi Alcoholic Beverage Control Division made out an affidavit before a magistrate stating that he "had reason to believe and did believe" that the defendant had intoxicating liquors in his possession in his house. Subsequently, a warrant was issued, and ABC agents conducted a search of defendant Gann's house. In the course of the search, the agents discovered no intoxicating liquor, but did find 102 cans of beer in defendant's refrigerator. Since beer was contraband in Chickasaw County, the agents seized the beer and arrested the defendant on charges of its possession. The defendant was tried in Justice of the Peace court, convicted, and fined $500.00 for possession of beer. On appeal de novo to the circuit court, the defendant moved to exclude the state's evidence (at the close of the prosecution's case) on the grounds that the affidavit for the search warrant and the search warrant itself were not in proper form. This motion was overruled. Following a jury verdict of guilty, the court sentenced the defendant to pay a $500.00 fine and to serve 90 days in jail with 60 days to be "held up pending good behavior." The defendant moved for a new trial, which was denied, and he appealed to this Court. He asserted that the affidavit for the search warrant was invalid, because the warrant specified intoxicating liquor, and only beer was found in the search. The prosecution had failed to prove that the alcoholic content of the beer exceeded 4% as required by state statutes and the local option liquor election of Chickasaw County, District No. 2. In affirming the decisions of the court below, this Court in an opinion prepared by Judge Smith, answered the contentions of the appellant in the following manner:
"The affidavit and warrant show that the objective of the agents in making the search was unlawfully possessed `intoxicating liquor.' The discovery and suppression of violations of the law with respect to intoxicating liquor are within the legitimate scope of the duties imposed upon the enforcement agents of the Alcoholic Beverage Control. In the course of their lawful search for intoxicating liquor, the beer was discovered. Since the agents were lawfully on the premises and beer was contraband in Chickasaw County, it was lawful for the officers to seize the beer, under the circumstances, and their testimony with respect to it was properly admitted. Williams v. State, 216 Miss. 158, 61 So.2d 793 (1953)." 234 So.2d at 628-629.
* * * * * *
"An objection was made to the introduction of the affidavit and warrant, but not to the testimony of the officers as to their discovery of beer in Gann's possession. The objection was overruled. This *924 action of the court is said to have been error. We think the court correctly overruled this objection. But the proposition was waived when Gann voluntarily elected to take the stand as a witness in his own behalf, and testified that he did, in fact, have the beer in his possession. He testified that he had the beer for his own personal use, that it had been prescribed by a chiropractor to be drunk as a treatment for some unidentified kidney ailment. Moreover, he placed the chiropractor on the stand, and this individual testified, corroborating Gann, and stated that he had advised Gann to drink `not less' than 5 bottles of beer a day to `flush out excess toxins' from his kidneys." 234 So.2d at 629.
The Court then summarized its position on the legality of the search and the admissibility of its fruits as follows:
"If it was error to permit the enforcement agents to testify that beer had been found in Gann's possession, it was cured when Gann himself voluntarily testified that such, indeed, had been the case. May v. State, 211 So.2d 845 (Miss. 1968); Goodman v. State, 158 Miss. 269, 130 So. 285 (1930); Blowe v. State, 130 Miss. 112, 93 So. 577, 24 A.L.R. 1429 (1922)." 234 So.2d at 629.
There are, however, several United States Supreme Court decisions which hold that a defendant does not necessarily waive his constitutional objections to illegally obtained evidence by voluntarily testifying to the substance of what the prosecution's evidence would have proven had it been properly admitted. One such case is Lee v. State of Mississippi, 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330 (1948). Here, the defendant, a 17-year-old Negro, was indicted by a grand jury in Mississippi on a charge of attemping to ravish a female of previous chaste character. During the course of the trial, the state offered the testimony of two city detectives as to an alleged oral confession obtained by them from the defendant. Objection was made that this confession had been secured as a result of duress, threats and violence, inflicted upon the defendant by two unidentified police officers several hours prior to the confession. The jury retired, and a preliminary hearing was held before the trial judge as to the voluntariness of this confession. After various witnesses appeared, including the petitioner himself, the judge concluded that the confession was voluntary, and that the testimony in relation thereto was admissible. This testimony proved be the crucial element leading to the jury's conviction of the defendant. His sentence was fixed at 18 years in prison. In reversing the decision of the Supreme Court of Mississippi, Mr. Justice Murphy stated in his opinion:
"The due process clause of the Fourteenth Amendment invalidates a state court conviction grounded in whole or in part upon a confession which is the product of other than reasoned and voluntary choice. A conviction resulting from such use of a coerced confession, however, is no less void because the accused testified at some point in the proceeding that he had never in fact confessed, voluntarily or involuntarily. Testimony of that nature can hardly legalize a procedure which conflicts with the accepted principles of due process. And since our constitutional system permits a conviction to be sanctioned only if in conformity with those principles, inconsistent testimony as to the confession should not and cannot preclude the accused from raising the due process issue in an appropriate manner. White v. State of Texas, 310 U.S. 530, 531, 532, 60 S.Ct. 1032, 1033, 84 L.Ed. 1342. Indeed, such a foreclosure of the right to complain `of a wrong so fundamental that it made the whole proceeding a mere pretense of a trial and rendered the conviction and sentence wholly void,' Brown v. State of Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461, 465, 80 L.Ed. 682, would itself be a denial of due process of law." 332 U.S. at 745-746, 68 S.Ct. at 301-302, 92 L.Ed. at 332-333.
*925 Another United States Supreme Court decision which touches on the issue raised in the case now on appeal is Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The facts in the Leary case are as follows. On December, 20, 1965, the defendant, Timothy Leary, left New York by automobile intending a vacation trip to Yucatan, Mexico. He was accompanied by his daughter and son, both teenagers, and two other persons. On December 22, 1965, the party drove across the international bridge between the United States and Mexico at Laredo, Texas. They stopped at the Mexican customs station and, after apparently being denied entry, drove back across the bridge. They halted at the American secondary inspection area, explained the situation to a customs inspector, and stated that they had nothing from Mexico to declare. The inspector asked them to alight, examined the interior of the car and saw what appeared to be marijuana seeds on the floor. The inspector then received permission to search the car and passengers. Small amounts of marijuana were found on the car floor and in the glove compartment. A personal search of petitioner's daughter revealed a silver snuff box containing semi-refined marijuana and three partially smoked marijuana cigarettes.
The defendant was indicted and tried before a jury in the federal district court for the Southern District of Texas, on three counts  involving smuggling marijuana, transporting marijuana, and failing to pay a transfer tax imposed on the importation of marijuana. The defendant was convicted on two of the above counts and was tentatively sentenced to the maximum punishment provided by law. On appeal, the Fifth Circuit Court of Appeals affirmed, and the United States Supreme Court granted certiorari to consider two questions, one of which involved the defendant's assertion of a self-incrimination defense. This particular problem is based upon defendant's objection to the introduction of any evidence as to his failure to pay the federal import tax on marijuana, claiming that to have done so would have been self-incriminatory. In the course of the trial, Leary took the stand and admitted not having paid the tax, which the government argued was a waiver of his Fifth Amendment rights as to self-incrimination. The United States Supreme Court held that his admission was consistent with his contention that the tax was self-incriminatory, and that he had not therefore waived his objections. Even though the defendant did not assert the self-incrimination defense until after his motion for a new trial, the United States Supreme Court held:
"Although it would have been preferable for petitioner to have asserted the privilege at trial, we hold that in the circumstances of this case his failure to raise the issue at that time did not amount to a waiver of the privilege. See Grosso v. United States, 390 U.S. 62, 70-71, 88 S.Ct. 709, 714-715, 19 L.Ed.2d 906 (1968)." 395 U.S. at 27-28, 89 S.Ct. at 1543, 23 L.Ed.2d at 77 (1969).
Also, in Leary, the Supreme Court of the United States had this to say about the defendant's waiver of his Fifth Amendment rights:
"The Government suggests that petitioner waived his right to plead self-incrimination in yet another way, by testifying at trial that he had violated the statute for reasons entirely unrelated to fear of self-incrimination. It is true that some portions of petitioner's testimony indicate that his noncompliance was motivated, at least in part, by his conviction that the Act imposed an illegal tax upon religion or upon the `pursuit of knowledge' and by his belief that, in consequence of the system of regulations and administrative practice described above, he would not be permitted to pay the tax. However, other parts of petitioner's testimony clearly indicate that he also was influenced by an apprehension that by trying to pay the tax he might incriminate himself. We cannot say that *926 petitioner's testimony, taken as a whole, amounted to a waiver of the privilege. We conclude that petitioner's invocation of the privilege was proper and that it should have provided a full defense to the third count of the indictment. Accordingly, we reverse petitioner's conviction under 26 U.S.C. § 4744(a)(2)." 395 U.S. at 28-29, 89 S.Ct. at 1544, 23 L.Ed.2d at 77-78.
In Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), the defendant was brought to trial before a jury in the District of Columbia upon a charge of felony murder. At that trial, the prosecution introduced three confessions allegedly made by the petitioner while he was in the custody of the police. After these confessions had been admitted in evidence, the petitioner took the witness stand and testified to his own version of the offense leading to the victim's death. The jury found the petitioner guilty, but the Court of Appeals reversed his conviction on the first trial, holding that the petitioner's confessions had been illegally obtained and were therefore inadmissible in evidence against him. On a retrial, the defendant was again convicted and the Circuit Court of Appeals affirmed the District Court. The United States Supreme Court granted certiorari, and reversed the judgment of the Circuit Court of Appeals.
The substance of the confessions was that the petitioner and two othters, armed with a shotgun, had gone to the victim's house intending to rob him, and that the victim had been killed while resisting the entry into his home. In his testimony at the trial, the defendant said that he and his companions had gone to the victim's home hoping to pawn the shotgun, and that the victim was accidentally killed while the defendant was presenting the gun to him for inspection. The United States Supreme Court, in an opinion prepared by Mr. Justice Stewart, observed:
"In concluding that the petitioner's prior testimony could be used against him without regard to the confessions that had been introduced in evidence before he testified, the Court of Appeals relied on the fact that the petitioner had `made a conscious tactical decision to seek acquittal by taking the stand after [his] incustody statements had been let in * *'. But that observation is beside the point. The question is not whether the petitioner made a knowing decision to testify, but why. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible. As Justice Tobriner wrote for the Supreme Court of California.
`If the improper use of [a] defendant's extrajudicial confession impelled his testimonial admission of guilt, * * * we could not, in order to shield the resulting conviction from reversal, separate what he told the jury on the witness stand from what he confessed to the police during interrogation.'" 392 U.S. at 223-224, 88 S.Ct. at 2010-2011, 20 L.Ed.2d at 1052.
The Supreme Court then went on to add:
"... [H]aving illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used. `The springs of conduct are subtle and varied,' Mr. Justice Cardozo once observed. `One who meddles with them must not insist upon too nice a measure of proof that the spring which he released was effective to the exclusion of all others.' Having `released the spring' by using the petitioner's unlawfully obtained confessions against him, the Government must show that its illegal action did not induce his testimony.
No such showing has been made here. In his opening statement to the jury, defense counsel announced that the petitioner *927 would not testify in his own behalf. Only after his confessions had been admitted in evidence did he take the stand. It thus appears that, but for the use of his confessions, the petitioner might not have testified at all. But even if the petitioner would have decided to testify whether or not his confessions had been used, it does not follow that he would have admitted being at the scene of the crime and holding the gun when the fatal shot was fired. On the contrary, the more natural inference is that no testimonial admission so damaging would have been made if the prosecutor had not already spread the petitioner's confessions before the jury. That is an inference the Government has not dispelled." 392 U.S. at 224-225, 88 S.Ct. at 2011-2012, 20 L.Ed.2d at 1052-1053.
Finally, an analogous situation is presented in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Here, the defendant was convicted of the armed robbery of a federally insured savings and loan association. On appeal to the Seventh Circuit Court of Appeals, the decision of the court below was affirmed in part and reversed in part, and certiorari was granted by the United States Supreme Court. The Supreme Court held that the testimony given by the defendant to meet standing requirements in order to raise an objection that the evidence was the fruit of an unlawful search and seizure should not have been admissible against him at the trial on the question of his guilt or innocence. Mr. Justice Harlan, speaking on behalf of the Court, stated:
"... [I]n this case Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." 390 U.S. at 394, 88 S.Ct. at 976, 19 L.Ed.2d at 1259.
There is no question that the doctrine of curative admissibility is generally recognized by this Court in cases of the type now on appeal; nonetheless, the issues raised in the above United States Supreme Court decisions are binding on this Court. Art. VI, cl. 2, United States Constitution.
In view of the opinions from the Supreme Court of the United States above mentioned, we have reached the conclusion that the appellant did not waive his objection to the illegally obtained testimony by testifying in his own behalf, although he admitted having the contraband in his possession.
The judgment of the trial court is hereby reversed and the appellant discharged.
Reversed and rendered.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH and BROOM, JJ., concur.
ROBERTSON, SUGG and WALKER, JJ., dissent.