# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01167-COA

**ERIC LAMONT TURNER A/K/A ERIC TURNER**     **APPELLANT**
**A/K/A ERIK L. TURNER A/K/A BLUE**

**v.**

**STATE OF MISSISSIPPI**            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/2023 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/11/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND EMFINGER, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. A Lee County grand jury returned a three-count indictment charging Eric Turner as a habitual offender for (1) trafficking a controlled substance, (2) being a felon in possession of a firearm, and (3) possessing a stolen firearm. The charge of possessing a stolen firearm was retired to the files. Following a jury trial, Turner was convicted of the remaining two charges. The trial court sentenced Turner to serve two consecutive terms of life in prison for the convictions as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev. 2020). Following the denial of his post-trial motion, Turner appealed and argues that the State failed to prove his habitual-offender status beyond a reasonable doubt and that

the trial court erred in denying Turner's motion to suppress the firearm. After reviewing the record, the parties' arguments, and relevant precedent, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On May 31, 2021, Turner and his wife, Venise Brown, engaged in a day-long verbal altercation. The Tupelo Police Department was dispatched numerous times to 2000 Nell Street where the couple lived. The second time police answered the call, Brown told them that Turner had a weapon in the trunk of his car. Turner consented to the search of his car. The police did not locate a weapon in the trunk and, instead, found only a single bullet in a shoebox. The officers left the scene but returned a few hours later when dispatched again. The officers advised Turner and Brown that it would be best that they separate that day to calm down, and Turner proceeded to leave in his car. As Turner was pulling out of the driveway, Brown told police that this time Turner had threatened her with a gun. Brown also told the officers that she saw Turner place drugs and the gun behind the radio in his car.

¶3. Based on this new information, Officer Kevin Cook left the scene and followed Turner to a gas station, as revealed by the body-camera footage. Cook pulled Turner over when he failed to use his turn signal. Officer Jeremey Montgomery arrived and assisted with the stop. Cook informed Turner of the new information they had received and told Turner they were going to search the vehicle. According to Cook, Turner did not object and gave no response. Cook "removed" Turner from the vehicle and searched Turner's car for a second time without a warrant. Cook pressed a button in the control panel to lift the radio and discovered a bag of methamphetamine pills, and behind it was a Jennings Model 38

2

pistol. Cook arrested Turner as a result of the search, and Montgomery seized the contraband.

¶4. On February 17, 2022, a Lee County grand jury indicted Turner for one count of trafficking in a controlled substance by having more than forty dosage units of methamphetamine in his possession, one count of being a felon in possession of a firearm, and one count of possessing a stolen firearm. The indictment also charged Turner as a habitual offender and listed two prior felony convictions in 1998 and 2004. Turner pled not guilty to all three counts at his arraignment.

*Turner's Motion to Suppress*

¶5. On May 5, 2022, Turner filed a pro se motion to suppress evidence, asking the court "to suppress any and all illegally obtained evidence that was not issued for a warrant thereof." Turner also stated he did not waive his objection to any illegally obtained evidence by testifying, citing *Keys v. State*, 283 So. 2d 919, 927 (Miss. 1973). On September 29, 2022, Turner wrote a letter to the circuit court clerk, asking why the court had not heard his motions after six months. On March 6, 2023, Turner filed a pro se petition for a writ of mandamus with the Supreme Court, seeking an order requiring the trial court to rule on his motion. The Clerk of Appellate Courts requested the trial court to file a response within fourteen days. On March 14, 2023, the trial court ordered the State to respond to Turner's motion. The Supreme Court ultimately dismissed Turner's petition as moot.

¶6. On April 4, 2023, the State responded to Turner's motion to suppress. In it, the State argued that Cook had both reasonable suspicion and probable cause to initiate the stop,

search, and arrest because Cook took action in locating Turner only "after the officers received additional information from Mrs. Brown regarding the exact location of the firearm and narcotics."

¶7. Without a hearing, the trial court ruled on Turner's motion to suppress. In its order, the trial court pointed out that although Turner moved to suppress "any and all illegally obtained evidence," he failed to actually describe any such illegally obtained evidence.[1] The court found that Cook had probable cause to initiate the traffic stop and search the vehicle because officers were informed that Turner, a known felon, was in possession of a gun and drugs, citing *Cole v. State*, 242 So. 3d 31, 38 (¶¶15-16) (Miss. 2018).

*Trial and Renewal of Turner's Motion to Suppress*

¶8. At trial on August 10, 2023, Cook and Montgomery, as well as North Mississippi Narcotics Unit Agent Beth Smith and crime lab employee Alicia Waldrop, testified for the State. Cook testified to the facts as stated above, recounting the events leading up to the arrest. The State also entered Cook's body-camera footage into evidence and published it to the jury. Next, the State marked the gun and drugs for identification purposes, and Cook testified as to the chain of custody for both.

---

[1] Our record reflects that the court never held a hearing on Turner's motion to suppress. We note that the trial court mentioned that Turner did not specify in his motion which items he wanted suppressed. Our Supreme Court has held that a motion to suppress is not properly before the court if the defendant "did not enumerate or describe or particularize the articles which he desired to suppress as evidence, and he failed to identify the objects at the evidentiary hearing on the motion." *Norman v. State*, 302 So. 2d 254, 257 (Miss. 1974) (quoting *O'Neal v. United States*, 222 F.2d 411 (D.C. Cir. 1955)); *see also Amador v. State*, 275 S.W.3d 872, 874 n.3 (Tex. Crim. App. 2009). However, this issue was not raised on appeal and therefore is not before the Court. Nonetheless, we caution trial courts to hold a hearing on motions to suppress evidence when properly presented.

¶9. On cross-examination, Cook again recounted the events leading to Turner's arrest, and his counsel challenged whether Turner actually consented to the search after the traffic stop. Cook stated that he perceived Turner's lack of response during the traffic stop as implied consent. Turner's counsel also entered the incident report into evidence and pointed out that Montgomery, who seized the contraband, was not mentioned in the report. Cook confirmed that Montgomery recovered the drugs and gun from Turner's vehicle. When asked why Montgomery's name was not mentioned in the report, Cook blamed himself, saying that he may have been just lazy. On redirect, the State introduced the gun to be entered into evidence. Turner's counsel objected and renewed his motion to suppress "both the gun and the drugs." The trial court again denied Turner's motion to suppress.

¶10. On direct examination, Montgomery testified that he was also dispatched to Turner's house with Cook. He confirmed that Brown told them that Turner had put the gun and drugs behind the radio. Cook left first, and Montgomery arrived moments after Cook had stopped Turner. Montgomery said he secured the gun and drugs while Cook handcuffed Turner. Montgomery gave the contraband to Cook and checked Turner's criminal history, which revealed that he had been convicted of a felony. The State then played Montgomery's body-camera footage from the incident.

¶11. Next, Beth Smith testified to the drugs' chain of custody. Smith is the captain of the Tupelo Police Department and commander of the North Mississippi Narcotics Unit. Smith was also the agent on call on the day of Turner's arrest. After Turner was in custody, Smith submitted the confiscated drugs to the crime lab for analysis.

¶12. Lastly, Alicia Waldrop testified as an expert forensic scientist employed by the Tupelo Police's crime lab, which specialized in drug analysis. Waldrop testified that she had performed "tens of thousands" of forensic tests over her twenty-three years as a forensic scientist and had testified as an expert over a hundred times. After the court accepted Waldrop as an expert, she testified that all 107 tablets retrieved from Turner's car tested positive for methamphetamine.

¶13. Turner did not testify or put on any defense.

¶14. After being instructed by the court, the jury deliberated and found Turner guilty of one count of possession of methamphetamine greater than twenty dosage units but less than forty dosage units and one count of being a felon in possession of a firearm.

*Sentencing Hearing*

¶15. At the sentencing hearing held on August 11, 2023, the State offered separate sentencing orders showing that Turner had been convicted and served time in Chickasaw County for a drive-by shooting in 1998 (HK-98-044) and for the sale of cocaine in 2004 (HK-2002-93). Both sentences were for more than a year. Jana Haggard, the Mississippi Department of Corrections (MDOC) liaison between the trial court and the MDOC, testified that in the course of her employment, she reviewed records from the MDOC regarding inmates' time calculations. Haggard stated that after reviewing Turner's records for the drive-by shooting, Turner was sentenced to serve three years in custody, but he actually served two years and seven months, being granted early-release supervision (ERS). Turner was still considered an inmate during his ERS and was discharged at the end of his three-year

6

sentence. Regarding Turner's incarceration for the sale of cocaine, Haggard testified that the records indicated he had been incarcerated for a total of four years, with three years and one month of that time having been served in prison and the remainder on ERS. The trial court found that Turner was a violent habitual offender pursuant to section 99-19-83. Turner was sentenced to serve two consecutive terms of life in prison in the custody of the MDOC.[2]

*Appeal*

¶16. Turner argues on appeal that the State failed to prove his habitual-offender status beyond a reasonable doubt. Turner contends that the State merely submitted sentencing orders, and in doing so, the State failed to prove all the essential requirements of section 99-19-83. Turner also argues that the trial court erred in denying his motion to suppress. Turner contends that since the sole basis for probable cause was a tip from Turner's wife, who had already provided "fruitless and unreliable" information, the search of Turner's car was a violation of his Fourth Amendment rights.

**DISCUSSION**

**I.      Whether the State proved Turner's habitual offender status.**

¶17. Turner first argues that the State failed to prove his status as a habitual offender beyond a reasonable doubt. Specifically, Turner alleges that the State presented no evidence that Turner "actually served over a year" as required by section 99-19-83, and, accordingly, he argues his sentence should be vacated and his case remanded. Specifically, Turner

---

[2] On August 21, 2023, Turner filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court did not rule on the motion, but pursuant to Mississippi Rule of Criminal Procedure 25.3, Turner's motion was deemed denied on the thirtieth day after filing.

contends that the State did not prove he actually served more than one year in custody. We

disagree.

¶18. Section 99-19-83 defines a violent habitual offender for purposes of imposing a life

sentence as:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

For a defendant to be sentenced as a habitual offender, the accused must be properly indicted

as a habitual offender, the prosecution must prove the prior offenses by competent evidence,

and the defendant must be given a reasonable opportunity to challenge such proof. *Young*

*v. State*, 368 So. 3d 299, 304 (¶10) (Miss. 2023) (citing *Grayer v. State*, 120 So. 3d 964, 969

(¶18) (Miss. 2013)). "A sentencing hearing on a defendant's habitual-offender status must

occur separately from the trial on the principal charge." *Ward v. State*, 346 So. 3d 868, 872

(¶14) (Miss. 2022) (quoting *Conner v. State*, 138 So. 3d 143, 151 (¶20) (Miss. 2014)). The

State must prove that the defendant is a habitual offender beyond a reasonable doubt. *Id*.

"To qualify as a violent habitual offender under Section 99-19-83, 'the State must prove that

a defendant has not only been at least twice previously convicted but that he has been

sentenced to and has served separate terms of one (1) year or more in any state and/or federal

8

penal institution.'" *Brent v. State*, 296 So. 3d 42, 51-52 (¶39) (Miss. 2020) (quoting *Rice v. State*, 134 So. 3d 292, 296 (¶9) (Miss. 2014)).

¶19.    In the case at hand, the State presented Jana Haggard, who testified that Turner served more than a year in custody for both his convictions of drive-by shooting and the sale of a controlled substance.  In her testimony, she gave the length, location, and dates of both the time he served in jail and on ERS for both of Turner's prior convictions. Haggard's testimony satisfied the requisites for section 99-19-83, and the State presented sufficient proof of Turner's habitual offender status.

### II.    Whether the trial court erred in denying Turner's motion to suppress.

¶20.    Next, Turner argues that the trial court erred by denying his motion to suppress.  "The standard of review for a trial court's denial of a motion to suppress based on an unlawful search or seizure is mixed." *Turnage v. State*, 389 So. 3d 1073, 1078 (¶13) (Miss. Ct. App. 2024) (citing *Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010)).  Whether reasonable suspicion or probable cause exists is subject to de novo review.  *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶11) (Miss. 1999).   Our review of the trial court's determinations of "historical facts" is applied using "the substantial evidence and clearly erroneous standards." *Buford v. State*, 323 So. 3d 500, 504 (¶11) (Miss. 2021) (quoting *Eaddy v. State*, 63 So. 3d 1209, 1212 (¶11) (Miss. 2011)).  Thus, "[i]n reviewing the denial of a motion to suppress, we must determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence." *Id.*

¶21.    Specifically, Turner claims that law enforcement lacked the requisite probable cause

9

for a warrantless search because Brown's tip lacked reliability. Particularly, Turner points out that Brown's initial statement that Turner had a gun in the trunk of his car was incorrect.

¶22. The State counters that Brown's tip was in fact reliable given the totality of the circumstances. Specifically, the State argues that after the first search, Brown later learned where Turner had actually hidden the contraband and informed the police. Accordingly, the State claims that the search was based on a "reasonable suspicion that Turner was committing criminal activity and the search was reasonably related to the information about where the contraband would be found."

¶23. "The Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution guarantee a person's right to be free from unreasonable searches and seizures." *Murshid v. State*, 326 So. 3d 489, 497 (¶22) (Miss. Ct. App. 2021) (quoting *Jones v. State*, 261 So. 3d 1131, 1139 (¶26) (Miss. Ct. App. 2018)). "As a general rule, our state and federal Constitutions prohibit searches without a valid warrant unless an exception applies." *Id*. "Such exceptions include a consensual search, a search incident to arrest, an inventory search, a search under exigent circumstances if probable cause exists, and a search of a vehicle when making a lawful contemporaneous arrest." *Galloway v. State*, 122 So. 3d 614, 669 (¶182) (Miss. 2013) (internal quotation marks omitted) (quoting *Bradley v. State*, 934 So. 2d 1018, 1022 (¶7) (Miss. Ct. App. 2005)). "If no exception is found, the evidence seized as a result of the search should be suppressed as fruit of the poisonous tree." *Murshid*, 326 So. 3d at 497 (¶22). "The State bears the burden to show that a warrantless search falls under one of the permissible exceptions." *Id*.

10

¶24. "[P]robable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Turnage*, 389 So. 3d at 1079-80 (¶17) (quoting *Walker v. State*, 881 So. 2d 820, 827 (¶15) (Miss. 2004)). Further, "[p]olice officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle as thorough as a magistrate could authorize by warrant." *Id.* (quoting *Franklin v. State*, 587 So. 2d 905, 907 (Miss. 1991)). Additionally, "when probable cause justifies the search of a vehicle which the police have lawfully stopped, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Austin v. State*, 72 So. 3d 565, 569 (¶14) (Miss. Ct. App. 2011) (internal quotation marks omitted) (quoting *Roche v. State*, 913 So. 2d 306, 313 (¶22) (Miss. 2005)); *see also Lopez v. State*, 343 So. 3d 408, 416 (¶29) (Miss. Ct. App. 2022).

¶25. In its order denying Turner's motion to suppress, the trial court found probable cause for the stop and the search, stating: "Here, officers were informed that Defendant—a prior convicted felon—was in possession of a firearm and drugs. Officer Cook also observed him commit a traffic violation. This provided probable cause (a burden higher than reasonable suspicion) to initiate the traffic stop and search the vehicle."

¶26. This Court agrees that the stop and the search were valid. Cook testified that he stopped Turner for a traffic violation. "As a general rule, the decision to stop an automobile

11

is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Austin*, 72 So. 3d at 568 (¶10) (internal quotation marks omitted). Cook also testified that law enforcement received multiple calls to Turner's residence. At one point, Brown told them Turner was hiding a gun in the trunk of his car. During the search of the trunk, which Turner consented to, they noticed a bullet in the box where Turner's wife, Brown, said the gun should have been, indicating Turner may have had a gun. Further, Turner allegedly threatened Brown with the gun, and Brown allegedly saw Turner hide the gun behind the radio in the vehicle. The body-camera footage reveals that Brown gave this new information to Cook. Turner had just left the area, and Cook followed him on the belief that Turner, who allegedly threatened Brown with a gun, was also in possession of illegal drugs. With the information given, Cook had probable cause to stop Turner's vehicle and search it. Accordingly, we find that the trial court's ruling was supported by substantial credible evidence, and the trial court did not err by denying Turner's motion to suppress.

## CONCLUSION

¶27. Because we find the State adequately proved Turner's habitual-offender status and because there was probable cause for law enforcement to search Turner's car, we affirm the trial court's denial of Turner's motion to suppress and affirm his convictions and sentences.

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER AND ST. PÉ, JJ., CONCUR. WEDDLE, J, NOT PARTICIPATING.**

12