HOLLOWAY v. STATE.

(In Banc. Dec. 11, 1939. Suggestion of Error Overruled Jan. 8, 1940.)

[192 So. 450. No. 33657.]

**Ovie L. Berry,** of Jackson, and **Martin & Farr,** of Prentiss, for appellant.

Russell Wright, Assistant Attorney-General, for the State.

Argued orally by **G. L. Martin,** and **Ovie L. Berry,** for appellant, and by **Russell Wright,** for appellee.

**McGehee, J.,** delivered the opinion of the court.

The appeal here is from a death sentence imposed on the appellant for the murder of Fred Magee in Jefferson Davis county. On the night of the killing the deceased and several other negroes were in a café, operated by one, Willie Wheeler, who had been furnishing music and

other entertainment for his customers until nearly three o'clock in the moring, when the killing occurred. Some fifteen or twenty minutes prior thereto the appellant left the small café building after having had some words with Fred Magee and Henry Thompson in regard to twenty-five cents which he wanted to get from Magee. Upon his return he pushed open the front door, made some exclamation, and fired toward the rear of the café room, in the direction of the place where Magee and Thompson were standing. At the time Magee was engaged in eating fish, and neither he nor any of the other occupants of the room were threatening the appellant, or attempting to harm him.

The gun used was a double-barreled shotgun, and when the first shot was fired several of the shot hit the hand of one of the bystanders, near Magee and Thompson. Thereupon the deceased and most of the other negroes rushed out of a side door. In the meantime the owner of the café had closed the door immediately upon the firing of the first shot, and that left the appellant on the outside, in front of the building. Almost immediately another shot was heard outside, near the corner, and in plain view of the side door, out of which the deceased and others had passed, due to the fact that there was an electric light overhead in the café room, which cast its rays through the doors when opened.

After the second shot the deceased was found lying on the ground, dying from a gunshot wound in his side. It was not shown which of the two shots struck and killed him; but no one other than the appellant was shown to have been on the outside of the building, at or near the place from which the second shot was fired; and he was recognized by nearly all the occupants of the building as being the person who fired the first shot. They saw him standing in the range of the electric light, the rays of which were cast through the door as he pushed it open. Most of the witnesses had known the appellant for years, and it is not reasonable to suppose that they were

mistaken as to his identity. Moreover, there is no conflict in the testimony as to who fired the first shot, and we are of the opinion that the jury was amply warranted in believing beyond a reasonable doubt that the appellant also fired the second shot. Immediately he was heard to say, "I will learn them all who to fool with." The testimony identifying him was further strengthened by the fact that the shotgun, which he returned to his brother-in-law a few minutes after the shooting, is alleged to have contained two empty shells.

A search for the appellant was soon begun, and two weeks later he was located in the northern part of the state. After his arrest he was placed in jail in Hattiesburg, from which place he was later taken to the county in which the crime was committed, to be given a preliminary trial.

It appears that the local justice of the peace before whom the trial was to be had, accompanied the sheriff to bring the appellant from Hattiesburg. En route to the trial, according to the testimony of the justice of the peace, the appellant said to him: "We have always been friends, and I want you to tell me what would be the best way for me to do, whether to plead guilty or not. I want to get bond." The officer testified, "Then I told him if he plead guilty of murder I couldn't give him bond. I told him he didn't have to testify, and I also told him how murder might be justified." The appellant then said, "I killed Fred Magee, but it was an accident. Henry Thompson threatened to hit me with a lamp and I went out and got a gun and come back and intended to kill Henry Thompson and accidentally killed Fred Magee." The officer further stated, "I told him I didn't think that would change the crime or the penalty at all. I told him he didn't have to testify at all and I told him I would go by the evidence, and I said, 'If I can allow you bond by the evidence I will.' "

The officer admitted that he stated to the appellant that if he plead guilty in the Circuit Court it might "go lighter with him." He was then asked this question; "Did you tell him that after he asked you the question?" "Yes, sir, after he asked me the other questions, and after he told me he intended to kill Henry Thompson instead of Fred Magee." On the issue as to whether or not the admission that he killed Fred Magee was free and voluntary, the appellant testified as follows: "Tell the court whether or not Mr. John Kurley (meaning the justice of the peace) told you it might go lighter with you if you would plead guilty?" "He did." "Is that the reason you made the statement to him?" "Yes, sir."

Upon this conflict in the testimony the court ruled that the confession was free and voluntary, and permitted it to go to the jury. Of course, the admission by the appellant that he killed the deceased could not have been induced by anything that the justice of the peace may have said to him after he had made such admission. We are not justified in reversing the finding of the lower court on this controverted question of fact.

Numerous other errors are assigned, such as the fact that the court directed the process for grand jurors and petit jurors to be made returnable on the second, instead of the first, day of the term; that the court should have appointed counsel to defend the appellant before he was indicted, or at least earlier than the 9th day of January, while the trial did not commence until about the 20th; that the court erred in refusing to grant several applications for a continuance, based on the ground that the appellant's wife, who was out of the state, was not present at the trial, and in support of which motion the appellant, instead of standing upon the showing made in his application for a continuance, voluntarily took the stand, and testified that his wife had been notified as to when the court would convene, and that he did not know what she would testify to if present; that his attorneys did not have time to prepare the case for trial; that

the law provided for the court term to be held for eighteen days, and the trial did not end until Saturday of the third week in January, following the commencement of the court term on the first Monday in January; that the court erred in overruling a demurrer to the indictment, and permitting an amendment thereto to correct a typographical error, wherein it was charged that the appellant did ''wilfully, unlawfully and with malice aforethought kill and murder *on* Fred Magee,'' when it was intended to be charged that ''he did . . . kill and murder *one* Fred Magee;'' that the court erred in refusing certain instructions on the weight to be given circumstantial evidence, although the case was based primarily on the testimony of eye-witnesses, when the court had already instructed the jury that in order to convict it was necessary that the jury should believe beyond every reasonable doubt, and to a moral certainty, and to the exclusion of every other reasonable hypothesis, that the appellant was guilty; that there was error in refusing certain instructions to the jury to disregard the confession if ''made in the hope that the case would go lighter with him,'' and which instructions omitted any reference to the issue as to whether or not the hope had been induced under circumstances such as to render it not free and voluntary; that the court erred in overruling certain objections to the testimony; and, finally, it is urged that the judgment and sentence of the court was void because the judgment did not affirmatively show that the appellant was placed at the bar and asked whether he had anything to say as to why judgment and sentence of the court should not be pronounced against him.

The order of the court allowing the amendment to the indictment to be made was entered on the minutes, as shown by the record here, specifying precisely the amendment to be made, as provided for by section 1290, Code of 1930, and the presumption is, in the absence of a showing to the contrary, that the district attorney did

not actually amend the indictment until the order allowing him to do so had been entered on the minutes.

Section 3403, Code of 1930, provides that, "A judgment in a criminal case shall not be reversed because the transcript of the record does not show . . . that the prisoner was present in court during the trial or any part of it, or that the court asked him if he had anything to say why judgment should not be pronounced against him upon the verdict . . . unless the record show that the errors complained of were made ground of special exception in that court."

This alleged error, of failing to have the judgment recite that the defendant was placed at the bar, and asked the question referred to, was not made ground of special exception in the court below, nor was it set up as ground for a new trial, so as to give the trial court an opportunity to have the judgment recite the true facts, or to sentence the defendant anew at the bar.

We have found from an examination of the record that every well-taken objection, whether of major or minor importance, made during the trial on behalf of the appellant, was sustained. Of course, there is no merit in any of the other objections hereinbefore enumerated, and nothing is to be gained by their discussion.

The judgment and sentence of the court below is therefore affirmed, and Friday, January 19, 1940, is fixed as the date for the execution.

Affirmed.