426 So.2d 775 (1983)
Joseph TAYLOR
v.
STATE of Mississippi.
No. 53930.
Supreme Court of Mississippi.
January 5, 1983.
J.W. Miller, Biloxi, for appellant.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, ROY NOBLE LEE and DAN M. LEE, JJ.
ROY NOBLE LEE, Justice, for the Court:
Joseph Taylor was indicted, tried and convicted in the Circuit Court of the Second Judicial District, Harrison County, for rape, Honorable J. Ruble Griffin, presiding, and was sentenced to life imprisonment. As a result of convictions in the State of Illinois, a sentencing hearing was held and Taylor was sentenced as an habitual criminal without parole or probation. This trial was the second on the same indictment, the first trial having resulted in a mistrial when the *776 jury could not agree upon the verdict. Taylor has appealed here and assigns six (6) errors in the trial below.

I.
The jury verdict was against the weight of the evidence.

II.
The court erred in declining to grant a mistrial when witnesses testified to a time when the rape occurred different from their testimony during the first trial.
The victim is age 19, originally from the State of New Jersey, and was living with her husband in an upstairs apartment, Biloxi, Mississippi, on June 4, 1980. He was stationed at Keesler Air Force Base.
According to the victim, on the morning of June 4, her husband left the apartment at 5:30 a.m. in order to check in at the Air Force Base by 6:00 a.m. Upon his departure, she went back to bed, but later was awakened by a knock at the door. She identified the person as appellant. He requested admittance on the pretext that he had come to repair some plumbing fixtures. The victim had discussed plumbing problems with the apartment manager, and, thinking that he was the plumber, she let appellant come into the apartment. He began to check the kitchen and the bathroom pipes and, as he came out of the bathroom, he grabbed the victim and threw her to the floor in the bedroom. She struggled and he began to strangle her almost causing her to lose consciousness. The victim resisted as long as she could, but the appellant threw her on the bed, tore open her robe and raped her. The attacker wore a fatigue shirt, blue jeans and black and white sneakers. When he left, she got dressed, went downstairs and reported to her neighbors in the apartment below what had occurred. She was taken to the Air Force Base hospital where Col. Donald Grillo, M.D., examined her. The victim picked out a photograph of the appellant from a picture lineup and positively identified him in the courtroom.
Mrs. Iola Marshall was a visitor in the home and apartment of her daughter and son-in-law on June 4, 1980. The apartment was downstairs from the upstairs apartment in which the victim and her husband lived. Mrs. Marshall's son-in-law was also a service man and he left around 5:30 a.m. on June 4 for work at the base. Mrs. Marshall had gotten up and was drinking coffee in the livingroom when she heard noises from upstairs, as if someone was hitting the floor, but she was not alarmed. Later, as she opened the drapes, she saw a man walk by outside the apartment, whom she identified as appellant. She was positive that appellant was the man walking by, since she had seen him on other visits to her daughter's apartment. Mrs. Marshall stated that when the victim came downstairs into their apartment, she was highly upset, and was holding her neck. When Mrs. Marshall learned what had happened, the victim was taken to the hospital.
Steven Cook from the Biloxi Police Department, conducted an investigation of the matter. He presented the victim with a photographic lineup and she immediately picked out appellant from a group of five individuals with similar features. As a result of the investigation, officers went to the trailer of appellant at 4:46 p.m. on the day of the rape, which was in a trailer park approximately two hundred (200) yards from the apartment. Their purpose was to arrest appellant, and when they arrived at the trailer, they heard music playing inside, but there was no answer when they knocked at the door. The local manager of the trailer park let the officers in the trailer, and appellant was found hiding underneath a bed. The following day, Mrs. Marshall was presented the same photographic lineup, and she also picked out appellant as the person she had seen walk by the apartment on June 4.
Appellant's defense was an alibi. Bonita L. Watkins, timekeeper at the City Barn, employed by the City of Biloxi, identified appellant's time card for June 4, 1980, which indicated that appellant clocked in at 6:54 a.m. and clocked out at 3:23 p.m. Supervisor Solberg and foreman Jackson for *777 the city ditch crew testified that appellant worked with them on June 4 and that their work hours are from 7:00 a.m. to 3:30 p.m. Solberg remembered taking Taylor to a job site in Bay Vista, leaving the barn around 7:15 a.m. and returning about 8:30 a.m. The foreman of the ditch crew remembered Taylor clocking in on June 4 and Solberg taking him to the job site.
On the first trial, the victim and Mrs. Marshall testified that the rape occurred at 7:00 a.m. and afterward. On the second trial, they revised the time to shortly after 6:00 a.m. Appellant's alibi did not cover the period prior to 6:54 a.m. and he did not testify.
On the facts stated above, the question of guilt was for the jury to decide. In considering all the evidence favorable to the State's case, together with the reasonable inferences flowing therefrom, we cannot say that the verdict of guilty was contrary to the overwhelming weight of the evidence. Bell v. State, 411 So.2d 763 (Miss. 1982); Warn v. State, 349 So.2d 1055 (Miss. 1977).
The appellant contends that the lower court should have granted a mistrial when the victim and Mrs. Marshall testified to a different time of the rape on the second trial from the first trial. The different time interval was not covered by appellant's alibi.
The appellant moved the court for a new trial on the ground of the difference in the testimony, which the court overruled. The lower court properly ruled on the motion because a variance or inconsistency in the testimony of witnesses is not a matter for mistrial, but is for the jury to consider as bearing upon the credibility of the witnesses. The victim and Mrs. Marshall admitted that they had changed the time of the rape. Mrs. Marshall stated that she had thought back on the events and that she was upset when the victim came downstairs, thus her reason for stating a wrong time. Peeples v. State, 218 So.2d 436 (Miss. 1974); Carraway v. State, 167 Miss. 390, 148 So. 340 (1933).
Probably, the appellant intended to ask for a continuance rather than a mistrial, on the ground of being surprised at the change in testimony. However, he filed no proper motion for a continuance, and, on motion for new trial, he did not produce any witnesses to prove an alibi from 6:00 a.m. to 7:00 a.m. on June 4, and he made no proof or indication of the fact that he could produce other witnesses to establish an alibi for such period of time. Therefore, the lower court did not err in denying a mistrial and overruling the motion for new trial.

III.
Did the lower court err in admitting into evidence photographs of the appellant taken from police files?
A photographic lineup of five (5) individuals, including the appellant, was presented to the victim and Mrs. Marshall. They each selected appellant as the person at the victim's apartment on June 4. Although appellant does not attack the photographs as being overly suggestive, he contends that they were mug shots and implied to the jury that appellant had a prior criminal record.
In Passons v. State, 239 Miss. 629, 124 So.2d 847 (1960), a robbery victim identified Passons from a group of photographs which were held to be properly excluded because they included pictures of convicted criminals showing their file number and that they were convicts. The present situation is distinguished from Passons because the trial judge required anything suggestive that the individuals in the photographs were convicts was covered or excluded. In Houston v. State, 360 So.2d 468, 469 (Fla. Dist. Ct. App. 1978), the Florida court considered this question and indicated that the photographs would not have been objectionable had they properly been covered or cropped. The Court said:
Our review of the record in this case leads us to the conclusion that the introduction of the photographs, clearly identifiable in this case as "mugshots" and showing a date prior to the date of the crimes charged in this matter, into evidence *778 constituted reversible error. See e.g., United States v. Harrington, 490 F.2d 487 (2d Cir.1973); Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966); Williams v. State, 110 So.2d 654 (Fla. 1959); and Mancebo v. State, 350 So.2d 1098 (Fla. 3d DCA 1977). Compare State v. Rucker, 330 So.2d 470 (Fla. 1976). We note, however, that if the photographs were properly cropped this objection could be alleviated.
We are of the opinion that the court did not err in admitting the photographic lineup into evidence.

IV.
Did the lower court err in granting Instruction D-3?
The appellant requested Instruction D-3 which pertains to the alibi defense. The instruction was amended by the lower court, and in that form, follows:
The Court instructs the Jury that alibi means elsewhere or in another place at the time of the alleged offense.
Alibi is a legal and proper defense of law. The defendant, JOSEPH TAYLOR, is not required to establish the truth of his alibi to your satisfaction, but if the evidence or lack of evidence in this case raises in the minds of the Jury a reasonable doubt as to whether the defendant was present and committed the crime, then you must give him the benefit of that doubt and find him NOT GUILTY.
The State objected to the original instruction on the ground that the appellant was "asserting the defense of alibi by saying that he was at work with the Biloxi Street Department at the time of the alleged offense," when the appellant did not testify in the case. Of course, the sense of the instruction is that appellant's evidence was to the effect that he was working at the time of the offense.
However, we think that the instruction as amended properly instructed the jury on the defense of alibi, was sufficient to submit that issue to the jury and does not constitute reversible error.

V.
Did the lower court err in excluding medical records from evidence?
Dr. Donald Grillo testified for the State concerning his examination of the victim. On cross-examination, the appellant's attorney did not question him specifically concerning his examination or about the victim's medical records. However, the attorney told the court he wanted the whole record to be introduced, which the lower court permitted. No objection was made at that time by the State.
During the conference for passing upon instructions, the appellant's attorney asked for a particular instruction on penetration basing as ground that the history given by the victim to Dr. Grillo indicated there was no penetration of her by the appellant. The district attorney objected and for the first time indicated that he did not understand the medical record was being introduced into evidence and moved to exclude the same. The record had not been passed to the jury nor had the jury seen the record, and the court sustained the motion to exclude. The appellant now contends that the history given by the victim to Dr. Grillo, as reflected by the medical record, indicated that the appellant attempted to penetrate her but he did not succeed. This history had the effect of contradicting the victim.
The victim testified positively that there was actual penetration of her by the appellant. The attorney for appellant did not lay a predicate for impeachment by asking her whether or not she told Dr. Grillo there was no penetration. The records were not admissible without laying the predicate for impeachment, and, therefore, the court did not err in excluding such records.[1]Scott v. State, 274 So.2d 376 (Miss. 1973); Ford v. Byrd, 183 Miss. 846, 184 So. 443 (1938).
We note that the medical records also show, under "Comments," that Dr. Grillo found spermatozoa to be present in the victim, which would corroborate the testimony *779 of the victim had the records not been excluded.

VI.
The habitual offender statute was not applicable since the defendant had not served "separate terms" of imprisonment.
The jury returned a verdict of guilty as charged and sentenced the appellant to life imprisonment. After charging the crime of rape, the indictment charged that the appellant previously had committed three crimes of rape and was sentenced to eight (8) to fifteen (15) years in the state penitentiary of Illinois and served at least one (1) year of said sentences. Although the Mississippi Code section was not stated, it is apparent that the State charged and elected to proceed under Mississippi Code Annotated § 99-19-83 (Supp. 1981). There are two habitual offender statutes, which follow:
Mississippi Code Annotated § 99-19-81 (Supp. 1981)
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Mississippi Code Annotated § 99-19-83 (Supp. 1981)
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Under the first statute, when a person is charged as a habitual offender, and the proof sustains the charge, upon conviction, he shall be sentenced to the maximum term of imprisonment provided by the criminal statute under which he was indicted, without parole or probation. Under the second statute, upon conviction, the accused, when charged that he previously was convicted of two (2) felonies, one of which constituted a crime of violence, and that he actually served one year or more on each sentence, shall be sentenced to life imprisonment without parole or probation.
As mentioned, the charge here is that the appellant was previously convicted on three (3) charges of violence and actually served one year or more on each charge. The proof does not show that he served such sentences on these convictions.
In Yates v. State, 396 So.2d 629 (Miss. 1981), Yates was charged with grand larceny as an habitual offender under Section 99-19-83. The evidence showed that Yates had not served separate terms as required by the statute and the case was remanded to the lower court for proper sentencing under Section 99-19-81, which meant the imposition of the five-year imprisonment without parole or probation rather than life imprisonment under Section 99-19-83. The Court said:
In the case at issue sentencing was under § 99-19-83 and cannot be upheld because the record clearly reveals that the defendant had not "served separate" terms as required by the statute. We conclude on the state of this record that the cause should be remanded for proper sentence under § 99-19-81, supra, not inconsistent with this opinion. Bell v. State, 355 So.2d 1106 (Miss. 1978). [396 So.2d at 631].
The effect of the Yates decision on the case sub judice is obvious. The purpose and intent of § 99-19-81 was to provide *780 that a person convicted of a felony, having been twice convicted and sentenced previously on a felony offense, and so charged in the indictment, shall be sentenced to the maximum term stated in the statute, without parole; of § 99-19-83 that a person convicted of a felony, having been convicted and sentenced twice before for felonies and having served one year and more on each, one of which convictions was a crime of violence, shall be sentenced to life imprisonment without parole or probation.
Following the precedent established in Yates v. State, supra, we would be required to remand this case to the lower court for resentencing under § 99-19-81. However, since appellant has been sentenced to life imprisonment, which is the maximum penalty imposed by the rape statute, and he has been sentenced without parole or probation as an habitual offender, the correct sentence was imposed, although under the wrong habitual offender section. Therefore, we do not remand the case for sentence as in Yates and the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] The appellant did not ask to reopen for the purpose of laying the predicate.