552 So.2d 99 (1989)
Dayral T. NATHAN
v.
STATE of Mississippi.
No. 07-58704.
Supreme Court of Mississippi.
October 25, 1989.
Rehearing Denied January 31, 1990.
*100 James L. Farrior, III, Fielding L. Wright Firm, Pascagoula, for appellant.
Edwin Lloyd Pittman, Atty. Gen., Mike C. Moore, Atty. Gen., Jackson, Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, PRATHER and ROBERTSON, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Dayral T. Nathan was convicted on all counts of a three-count indictment in the Circuit Court of Jackson County, Mississippi, to-wit: Count I, Burglary of an occupied dwelling in the night with a deadly weapon with intent to commit armed robbery; Count II, Armed Robbery; Count III, Kidnapping. The indictment charged that Nathan was an habitual offender under § 99-19-83. Following the sentencing hearing the indictment was amended and Nathan was sentenced as an habitual offender under § 99-19-81. We affirm.

FACTS
In the early morning hours of October 5, 1986, Simmie W. Graves awoke to find a black man sitting on his chest. The men struggled. Graves ceased resisting after being struck in the face numerous times and told his throat would be cut if he did not stop fighting. The intruder removed a folded ten dollar ($10.00) bill from Graves' wallet and accompanied Graves to the kitchen.
Following the instructions of the intruder, Graves wrote a check in the amount of one hundred fifty dollars ($150.00) and got dressed. The men got into Graves' truck, which was parked under the street lights, and Graves drove the truck to Wayne Lee's Grocery in order to cash the check. The trip took eight to ten minutes.
Upon arrival at Wayne Lee's grocery, Graves left the keys in the truck and entered. Heeding the intruder's warnings, Graves did not tell anyone what was happening. The employees of Wayne Lee's refused to cash the check.
As Graves returned to the truck, he saw the intruder standing by a Coke machine. Graves returned to Wayne Lee's store to get help. Finding no help, Graves once again left the store and then saw the intruder on the far side of the truck at the edge of the parking lot. As he was driving away, Graves saw the intruder again in front of the Rock-A-By Motel.
Graves drove directly to the Pascagoula Police Station, arriving between 1:15 and 1:20 a.m., and related his story to Lieutenant Tom Miletich. Graves described the intruder as a black man, approximately 5'7", wearing dark pants and a light colored, horizontally stripped shirt. Lt. Miletich relayed this information over the radio and asked for any unit in the area of Rock-A-By Motel and Wayne Lee's to respond.
Officer Ronnie Castille was on routine patrol at approximately 1:30 a.m. when he saw a black male wearing dark pants and a light colored shirt run across the road. Officer Castille decided to investigate since he was in a commercial area which had been the scene of previous burglaries.
After turning his patrol car around, Officer Castille received Lt. Miletich's radio transmission and responded. Castille reached the suspect and asked him to stop; *101 the suspect complied. At this time a Reserve unit joined Castille.
Castille asked the suspect his name and received an answer: "Dayral Nathan." The officer then asked where Nathan was coming from and where he was headed. In response, Nathan said he was going to visit his sister and had just come by the Rock-A-By Motel. Castille conducted a pat-down of Nathan. Nathan informed the officer that he was carrying a knife. Castille told him to leave the knife where it was; Nathan complied.
Radio communication between Officer Castille and Lt. Miletich continued. Castille learned that the suspect was wanted for armed robbery, assault and kidnapping. He was also advised that the suspect would have a folded ten dollar bill ($10.00) and a knife in his possession. Nathan displayed the items and the officer took them. At this time, acting on orders from Lt. Miletich, Castille placed handcuffs on Nathan and transported him to the police station.
Upon arrival at the station, Nathan was escorted into the booking area. Graves was instructed to step out of Lt. Miletich's office and look through the window into the booking area to see if he could identify his attacker. Graves immediately identified Nathan, who was then booked.
Dayral Tyrone Nathan was tried and convicted on all three charges on May 29, 1987. On June 2, 1987 Nathan was adjudicated as an habitual offender under MCA § 99-19-81 and was sentenced to concurrent sentences of (1) 20 years on Count I, (2) 30 years on Count II and (3) 30 years on Count III. Feeling aggrieved with the outcome, he appealed and, through counsel, assigns as error the following:
I. The Court Erred in Overruling the Defendant's Pre-Trial Motion to Suppress Any and All Statements he May Have Made to the Law Enforcement Officers at the Time of or Subsequent to his Arrest and Any and All Physical Evidence Removed From Defendant by Law Enforcement Officers at the Time of or Subsequent to his Arrest and Any and All Results of Scientific Tests Performed Upon Said Physical Evidence Because All of Said Evidence Was the Result of an Illegal Search and Illegal Arrest.
II. The Court erred in Overruling the Defendant's Pre-Trial Motion to Suppress All Evidence and Testimony Concerning a Post-Arrest, Pre-Trial Identification and an In-Court Identification of the Defendant by the Alleged Victim During the Trial Because the Out of Court Identification Procedure was Unnecessarily Suggestive and Gave Rise to a Substantial Likelihood of Misidentification and There was Not a Sufficient Independent Basis Apart From the Out of Court Identification Upon Which to Base an In-Court Identification and Said Identification Would Not Have Occurred but for the Illegal Arrest of the Defendant.
III. The Court Erred in Overruling the Defendant's Objection to the Amendment of the Indictment and the Court Erred in Sentencing the Defendant Without Amending Said Indictment Until Some Ten (10) Days After Sentencing and After the Defendant Had Been Committed to the Mississippi Department of Corrections.
Nathan, pro se, assigns as error the following:
I. The Use of a Photo Display of the Petitioner Deprived the Petitioner [of] Due Process of the Law [Guaranteed by] the Fourteenth Amendment of the U.S. Constitution.
II. The Manner in Which the Photo Was Admitted Into Evidence Violated the Petitioner's Rights to a Fair Trial [Guaranteed] by the Sixth Amendment of the U.S. Constitution.
III. The State Failed to Comply with Rule 4.06 (by) Not Producing the Report of the Officer Who did an Overall Investigation in the Petitioner['s] Case.
IV. The State Failed to Comply with Rule 4.06 Until During Trial[,] State Exhibit No. 8.
We first address the assignments of error presented by Nathan's counsel.

*102 ASSIGNMENTS OF ERROR PRESENTED BY COUNSEL
I.
The Court Erred in Overruling the Defendant's Pre-Trial Motion to Suppress Any and All Statements he May Have Made to the Law Enforcement Officers at the Time of or Subsequent to his Arrest and Any and All Physical Evidence Removed From Defendant by Law Enforcement Officers at the Time of or Subsequent to his Arrest and Any and All Results of Scientific Tests Performed Upon Said Physical Evidence Because All of Said Evidence Was the Result of an Illegal Search and Illegal Arrest.
Nathan argues two separate grounds in support of this assignment, each of which is addressed below. After careful reading of the record and application of the law, we find no merit in either of these arguments.

A. Arrest and Search
Nathan contends that he was not under arrest at the time he was stopped by Officer Castille. Since he was not under arrest, he argues the pat-down conducted by Officer Castille was in actuality a search conducted for the sole purpose of discovering evidence to form the basis for probable cause for the arrest in violation of Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). As such, Nathan contends that he was subjected to an illegal pre-arrest search which exceeded the limits of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), thereby violating his rights under the Fourth Amendment to the United States Constitution and Article III, § 23 of the Mississippi Constitution. Relying on Keys v. State, 283 So.2d 919 (Miss. 1973) for support, he argues that all evidence obtained from this illegal search should have been suppressed.
The facts in Keys are distinguishable from the case sub judice. The law enforcement officer in Keys had a search warrant for the defendant's apartment, 283 So.2d at 920, and proceeded to Keys' apartment to serve the warrant. Upon arrival he saw Keys driving away; followed Keys and  although Keys was not violating any laws  pulled Keys over for the purpose of serving the warrant. Once his vehicle was stopped, Keys was ordered out of the car. The officer conducted a pat-down and recovered containers of marijuana from Keys' person; a search of Key's automobile yielded additional amounts of marijuana. Key's was arrested for possession of marijuana and subsequently served with the search warrant. This Court held that the search was illegal and that the evidence obtained as a result of the illegal search was inadmissible.
It is clear from the facts that the officer in Keys was looking for an identified person for the specific purpose of serving him with a search warrant. In the case sub judice, Officer Castille had already made the decision to investigate before he received the radio call to look out for a man meeting Nathan's description. Therefore, Castille was not looking for an identifiable person at the time he observed Nathan running in a high crime area; Officer Castille was on routine patrol.
This Court has articulated three types of actions in which police officers may engage in the performance of their duties of "preventing crime, detecting violations, making identification, and in apprehending criminals ...":
(1) Voluntary conversation: An officer may approach a person for the purpose of engaging in a voluntary conversation no matter what facts are known to the officer since it involves no force and no detention of the person interviewed; (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest; (3) Arrest: An arrest may be made only when the officer has probable cause.
Singletary v. State, 318 So.2d 873, 876 (Miss. 1975). While probable cause is required before a lawful arrest may be effectuated, *103 a reasonable suspicion is all that is required to effectuate a "stop and frisk." Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Floyd v. State, 500 So.2d 989 (Miss. 1986); McCray v. State, 486 So.2d 1247 (Miss. 1986); Henry v. State, 486 So.2d 1209 (Miss. 1986); Hester v. State, 463 So.2d 1087 (Miss. 1985); Smith v. State, 386 So.2d 1117 (Miss. 1980).
Investigative, or Terry stops, are recognized in this state. Floyd v. State, 500 So.2d 989 (Miss. 1986); McCray v. State, 486 So.2d 1247 (Miss. 1986); Caldwell v. State, 381 So.2d 591 (Miss. 1980); Warren v. State, 369 So.2d 483 (Miss. 1979); Green v. State, 348 So.2d 428 (Miss. 1977); Singletary v. State, 318 So.2d 873 (Miss. 1975). When a "reasonable investigatory stop" is conducted, an officer is authorized to "conduct a weapons search limited in scope" to the discovery of concealed weapons. Singletary at 877.
This Court must look to the facts of each case in determining whether a stop and frisk incident to a Terry stop was reasonable and warranted or was unreasonable and so intrusive as to amount to a constitutional violation. Penick v. State, 440 So.2d 547, 550 (Miss. 1983); Green v. State, 348 So.2d 428, 429 (Miss. 1977). After a careful examination of the evidence presented during the suppression hearing on this point, we find that the initial stopping of Nathan was a Terry stop. We also find that the search incident to this stop was within permissible limits.
At the close of the suppression hearing on this issue, the trial court made a finding of fact that from the time Nathan was stopped until he was handcuffed and transported to the police station, his Constitutional rights were protected. Since this Court will not reverse this finding of fact unless it is clearly erroneous, Woodward v. State, 533 So.2d 418, 426 (Miss. 1988); West v. State, 463 So.2d 1048, 1056 (Miss. 1985), this argument is rejected.

B. MIRANDA
Nathan next argues that he was under arrest at the time he was stopped by Officer Castille. He contends that the arrest was illegal and without probable cause. As a result of this illegal arrest, Nathan argues that all statements made by him should have been suppressed because he was not given Miranda warnings.
Having determined that the initial stopping of Nathan constituted a Terry stop, it is apparent that Nathan was not under arrest at the time he was stopped, even though Nathan may not have reasonably believed he was free to leave. See Floyd v. State, 500 So.2d 989 (Miss. 1986); Riddles v. State, 471 So.2d 1234 (Miss. 1985). Additionally, since the actions of Castille did not exceed the stop of a Terry-type stop, the only question for us to consider is whether Nathan's constitutional rights were violated because he was not given Miranda warnings prior to the statements.
When an interrogation is investigatory, non-custodial or "on-the-scene", Miranda warnings do not have to be given. See Tolbert v. State, 511 So.2d 1368, 1375 (Miss. 1987) and citations therein. The absence of Miranda warnings during an investigatory, non-custodial or on-the-scene investigation do not preclude the admissibility of any statement freely and voluntarily given during such investigation. Id.
The substance of the statements made by Nathan in response to Castille's questions come from the suppression hearing testimony of Castille. The statements made by Nathan consist of his name, the fact that he had come from "by the Rock-A-By Motel" and was on his way to his sister's apartment, and that he had a knife. The record of the suppression hearing does not reveal any other verbal exchanges between Officer Castille and Nathan at any time, nor does it reflect that these statements were the result of coercion or were otherwise involuntary. The trial court held the statements admissible.
Nathan's statements were made in response to Castille's general questions during an investigatory stop. Under the circumstances existing at the time, Miranda *104 warnings were not required. The statements were admissible.
II.
The Court erred in Overruling the Defendant's Pre-Trial Motion to Suppress All Evidence and Testimony Concerning a Post-Arrest, Pre-Trial Identification and an In-Court Identification of the Defendant by the Alleged Victim During the Trial Because the Out of Court Identification Procedure was Unnecessarily Suggestive and Gave Rise to a Substantial Likelihood of Misidentification and There was Not a Sufficient Independent Basis Apart From the Out of Court Identification Upon Which to Base an In-Court Identification and Said Identification Would Not Have Occurred but for the Illegal Arrest of the Defendant.
Nathan contends that he was the only black man present at the post-arrest show-up conducted at the police station, arguing that this out-of-court identification violated the test articulated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). He contends that the trial court erred in not excluding all testimony regarding this identification.
The question of whether the testimony of an admittedly suggestive and unnecessary pretrial identification was admissible was addressed in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The United States Supreme Court said:
We therefore conclude that reliability is the linchpin in determining the admissibility... . The factors to be considered are set out in Biggers, 409 U.S. at 199-200 [, 93 S.Ct. at 382]... . Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
Id. 432 U.S. at 114, 97 S.Ct. at 2253. This Court has adopted these standards. See Wash v. State, 521 So.2d 890 (Miss. 1988); Jones v. State, 504 So.2d 1196 (Miss. 1987); Ray v. State, 503 So.2d 222 (Miss. 1986); Thompson v. State, 483 So.2d 690 (Miss. 1986); Cabello v. State, 471 So.2d 332 (Miss. 1985); York v. State, 413 So.2d 1372 (Miss. 1982).
As we stated in York:
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
York at 1383.
This Court is to apply the totality of the circumstances test in determining whether a trial court erred in its ruling regarding identifications. Ray v. State, 503 So.2d 222, 224 (Miss. 1986). We will act on such a ruling only when "there is an absence of substantial credible evidence supporting it." Id.
Without necessity for the procedure, it is impermissibly suggestive for an officer to bring an accused to an eyewitness. York at 1381, citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In the case sub judice the necessity came from the uncontradicted testimony of Lt. Tom Miletich during the suppression hearing: the need to eliminate Nathan as a suspect. The trial court found the show-up procedure to be necessary and, under the circumstances, could not have been handled any other way. We agree. An examination of the suppression hearing evidence reveals that Nathan may not have been the only black male present during the identification procedure. Under the circumstances, we turn to the test found in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Neal v. Biggers factors as applied to this case are:
1. Opportunity to view the accused.

Graves had ample opportunity to view his assailant: during the 15 to 20 minutes they were inside the apartment, under the street light while getting into the truck, during the 8 to 10 minute *105 ride to the grocery store, and in the lit parking lot while at the store.
2. Degree of attention.

Graves was in close proximity to this assailant during the struggle, the remainder of the time at the apartment and on the ride to the grocery store. Even though he was severely beaten, Graves testified to having 20/20 vision.
3. Accuracy of prior description.

Graves described his attacker as a light skinned black man with a mustache, approximately 5X7" weighing 170 pounds, wearing dark pants and a horizontally stripped shirt. Dayral Nathan fit that description.
4. Witness's level of certainty at confrontation.

Upon seeing Nathan at the police station, Graves immediately identified Nathan as his assailant.
5. Length of time between the crime and the confrontation.

The confrontation occurred shortly after Graves arrived at the police station after leaving his assailant.
There is substantial credible evidence to support the trial court's ruling. Therefore, we find that the trial court did not err in overruling the Motion to Suppress the identification. This assignment of error is without merit.
III.
The Court Erred in Overruling the Defendant's Objection to the Amendment of the Indictment and the Court Erred in Sentencing the Defendant Without Amending Said Indictment Until Some Ten (10) Days After Sentencing and After the Defendant Had Been Committed to the Mississippi Department of Corrections.
During the habitual status hearing required by Rule 6.04 of the Uniform Criminal Rules of Circuit Court Practice, the trial court allowed the State to amend the indictment to reflect that Nathan was charged as an habitual under § 99-19-81 rather than § 99-19-83. Nathan claims that he was surprised by this amendment; that he was prejudiced by the amendment because he did not know what penalty the State was seeking to impose; and that the order allowing the amendment was not valid because it was entered on the minutes after the trial. We find no merit in these arguments.
Nathan correctly contends, without opposition, that "to be permissible, the amendment to an indictment must be of form and not of substance." Akins v. State, 493 So.2d 1321 (Miss. 1986); Copeland v. State, 423 So.2d 1333 (Miss. 1982); Hannah v. State, 336 So.2d 1317 (Miss. 1976); Sanders v. State, 313 So.2d 398 (Miss. 1975). We hold that the amendment was of form.
Nathan was indicted under § 99-19-83 as an habitual offender. § 99-19-83 states:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspected nor shall such person be eligible for parole or probation.
The State introduced a "Pen Packet" from the Mississippi Department of Corrections to prove that Nathan was an habitual offender within the meaning of § 99-19-83. The packet showed the following concurrent sentences, all imposed July 28, 1981:
1. Eight (8) years in the Mississippi Department of Corrections for the crime of arson:
2. Three (3) years in the Mississippi Department of Corrections for the crime of burglary and larceny;
3. Three (3) years in the Mississippi Department of Corrections for the crime of burglary; and

*106 4. Three (3) years in the Mississippi Department of Corrections for the crime of assault on a law enforcement officer.
Nathan served these concurrent sentences in the Mississippi Department of Corrections until his release on October 16, 1983, two (2) years and three (3) months later.
Counsel for Nathan successfully argued to the trial court that the proof failed to meet the requirements of § 99-19-83. As a result, the trial court allowed the State to amend the indictment to charge habitual offender status under § 99-19-81, which reads:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Over defense objections, Nathan was sentenced as an habitual offender to concurrent sentences of (1) 20 years on Count I, (2) 30 years on Count II and (3) 30 years on Count III. The Order amending the indictment was signed June 10, 1987 and filed June 11, 1987.
When habitual offender status is alleged and where the accused goes to trial, the trial court must hold a separate hearing without a jury to determine whether habitual status should be imposed. See Hoover v. State, 552 So.2d 834, (Miss. 1989), and cases cited therein; and Keyes v. State, 549 So.2d 949 (Miss. 1989); Rule 6.04, Uniform Criminal Rules of Circuit Court Practice. There are three possible decisions a trial court may reach in such a hearing: habitual offender status under § 99-19-83, habitual offender status under § 99-19-81, or no habitual offender status.
This Court has dealt with the reverse of the issue presented by this assignment of error, that is, where a defendant was indicted under § 99-19-81, an amendment was allowed, and the defendant was sentenced under § 99-19-83. See Ellis v. State, 485 So.2d 1062 (Miss. 1986) (remand; case fell under Smith v. State, infra); Ellis v. State, 469 So.2d 1256 (Miss. 1985) (no error in the amendment); Smith v. State, 477 So.2d 191 (Miss. 1985) (violation of due process; reverse sentencing and remand for resentencing). We have also held that when a defendant is wrongly sentenced under § 99-19-83, the case is to be remanded for resentencing under § 99-19-81. See Akins v. State, 493 So.2d 1321 (Miss. 1986); Ellis v. State, 485 So.2d 1062 (Miss. 1986); Smith v. State, 477 So.2d 191 (Miss. 1985); Yates v. State, 396 So.2d 629 (Miss. 1981).
Mississippi's Habitual Offender Statutes, § 99-19-81 and § 99-19-83, "only affect sentencing." Osborne v. State, 404 So.2d 545, 548 (Miss. 1981). The difference in these statutes was pointed out by this Court in Taylor v. State, 426 So.2d 775 (Miss. 1983):
Under [99-19-81] when a person is charged as a habitual offender, and the proof sustains the charge, upon conviction, he shall be sentenced to the maximum term of imprisonment provided by the criminal statute under which he was indicted, without parole or probation. Under [99-19-83], upon conviction, the accused, when charged that he previously was convicted of two (2) felonies, one of which constituted a crime of violence, and that he actually served one year or more on each sentence, shall be sentenced to life imprisonment without parole or probation.
(emphasis added) Id. at 779. This explanation clearly shows that § 99-19-83 imposes a greater sentence than does § 99-19-81.
Nathan was originally indicted under § 99-19-83. The indictment was sufficient to apprise Nathan that the State was seeking to impose habitual status. See Akins v. State, 493 So.2d 1321, 1322 (Miss. 1986); Dalgo v. State, 435 So.2d 628, 630 (Miss. 1983). The amendment allowed for a lesser *107 sentence. Additionally, the amendment affected only the sentence, not the underlying offenses for which Nathan was tried.
It is well settled in this state, ... that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case.
Ellis v. State, 469 So.2d at 1258, citing Shelby v. State, 246 So.2d 543, 546 (Miss. 1971).
Nathan did not ask for a continuance when the amendment was offered and allowed, yet he claims surprise. This Court has previously addressed this subject:
No request for a continuance was made. This court has held that where a defendant does not ask for a continuance when an indictment is amended he cannot later object that he was surprized and prejudiced in this defense. (Peebles v. State, 55 Miss. 434 (1877); Sanders v. State, 219 So.2d 913 (Miss. 1969); cert. denied 396 U.S. 913, 90 S.Ct. 228, 24 L.Ed.2d 188).
Ellis v. State, 469 So.2d 1256, 1258.
In support of his contention that an order allowing an amendment must be entered on the minutes prior to trial to be valid, Nathan cites the following cases: Mahfouz v. State, 303 So.2d 461 (Miss. 1974); Woods v. State, 186 Miss. 463, 191 So. 283 (1939); Holloway v. State, 187 Miss. 238, 192 So. 450 (1939); Davis v. State, 144 Miss. 551, 110 So. 447 (1926). We find these cases to be unpersuasive, because they deal with amendments to the underlying offense charged in the indictment, not the sentencing, as is the case here.
The record clearly shows that the offer to amend was orally made after defense counsel successfully argued that the State had not proven that Nathan served separate sentences on each of the prior convictions as required by § 99-19-83. The amendment was orally accepted and ordered by the trial court during the sentencing hearing on June 2, 1987. The written order amending the indictment was signed by the trial judge on June 10, 1987 and filed June 11, 1987. The term of court ended June 12, 1987.
Apparently Nathan would have this Court hold that a trial judge can never orally amend the habitual statute charged in an indictment to the lesser of the two habitual offender statutes during the sentencing phase when it becomes apparent that the State has not met its burden under the greater habitual offender statute and the defendant is well aware that the State is seeking to sentence him as an habitual offender. We reject this argument.
Finding no merit to any assignment of error raised by Nathan's counsel, we now turn to the assignments of error presented by Nathan, pro se.
ASSIGNMENTS OF ERROR PRESENTED BY NATHAN, PRO SE
I.
The Use of a Photo Display of the Petitioner Deprived the Petitioner Due Process of the Law (Guaranteed by) the Fourteenth Amendment of the U.S. Constitution.
Nathan contends that Graves' identification was reconstructed from a photo display. He bases this assignment on an answer given by Graves in response to a question concerning the type shirt Nathan was wearing when he was identified. The record is void of any mention of a photo display presented to Graves for identification purposes.
An appeal without a record to support a contention can be a vain and foolish act. Records are made to avoid such things. As Walker, J., said in Booker v. State, 449 So.2d 209 (Miss. 1984), "it is elemental that facts set forth in briefs of counsel are insufficient to support an assignment of record. All facts relied on in the briefs must appear in the record to be considered by this Court." 449 So.2d at 221.
Jenkins v. State, 483 So.2d 1330, 1332 (Miss. 1986). This assignment is not supported *108 by a record and is therefore rejected.
II. and IV.
The Manner in Which the Photo Was Admitted Into Evidence Violated the Petitioner's Rights to a Fair Trial (Guaranteed) by the Sixth Amendment of the U.S. Constitution.
The State Failed to Comply with Rule 4.06 Until During Trial[,] State Exhibit No. 8.
Nathan contends that the State's Exhibit No. 8, a photograph of him taken by Officer Jimmy Masset approximately 36 hours following booking, was improperly admitted. He bases this contention on several grounds: (1) the State did not demonstrate any need for the photograph; (2) the photograph implied he had a prior criminal record in violation of Sloane v. State, 437 So.2d 16 (Miss. 1983); and (3) the State did not produce the photograph in compliance with Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice until the middle of the trial. We reject these assignments as being without merit for the following reasons.
When a defendant alleges the State has not complied with discovery, it is incumbent upon the defendant to object or request a continuance. Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986). The record in the case sub judice contains no objections by Nathan or his counsel, at any time, regarding the timeliness of the State's compliance under Rule 4.06.
The record also reflects that neither Nathan nor his counsel objected to the introduction of State's Exhibit 8. This Court has consistently held "that the failure to make a contemporaneous objection at trial constitutes a waiver of any error subsequently assigned." Moawad v. State, 531 So.2d 632, 634 (Miss. 1988) (citations omitted).
III.
The State Failed to Comply with Rule 4.06 [by] Not Producing the Report of the Officer Who did an Overall Investigation in the Petitioner['s] Case.
Nathan contends that the State had in its possession a report containing exculpatory material, prepared by one Pete Martin, who allegedly did an overall investigation in the case sub judice. He contends that the State violated Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice by not disclosing this report to the defense.
Again, the record does not contain any objection by Nathan or his counsel to the lack of information supplied by the State in compliance with Rule 4.06. See Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986). There is no mention in the record anywhere of a "Pete Martin," nor does the record reflect that there was an over-all investigating officer who prepared a report.
When an assignment is predicated on facts not contained in the record, this Court has held:
We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.
(citations omitted). Britt v. State, 520 So.2d 1377, 1379 (Miss. 1988) (citing Mason v. State, 440 So.2d 318, 319 [Miss. 1983]). This assignment is without merit.
Accordingly, the conviction and sentence of the Circuit Court of Jackson County in this case are affirmed; Jackson County is taxed with the costs of this appeal.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.