274 So.2d 376 (1973)
Jimmy SCOTT
v.
STATE of Mississippi.
No. 47096.
Supreme Court of Mississippi.
February 26, 1973.
Rehearing Denied March 26, 1973.
J. Murray Akers, G. Kenner Ellis, Jr., Greenville, for appellant.
A.F. Summer, Atty. Gen. by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant Jimmy Scott was indicted at the November term of the Circuit Court of *377 Washington County for the crime of murder in the killing of John Dillard. He was tried at the February 1972 term of the court and the jury found him guilty of manslaughter. He was sentenced to serve a term of fifteen years in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
The evidence on behalf of the state established that on Sunday night, August 22, 1971, the deceased, his wife Mary Dillard, and their children were at the home of her father, Jonas White, when the appellant came to the home. Appellant and Mary Dillard had been having an affair, and she had informed him that it was all over. After appellant came into the house and exchanged some words with the Dillards, the Dillards started to leave to go home. John walked out the door first, then when Mary started out the door, appellant grabbed her by the hand. Willie Walton, who was visiting in the home, testified as to what transpired. A part of his testimony is as follows:
And he went on out the door and Mary Ellen went out behind him. Jimmy Scott caught Mary Ellen's hand and I caught Jimmy Scott's hand. I said turn that woman loose  you see her husband going long there. And he turned her loose and he said I'm going to have to kill them. And I said, ain't no need in doing that  you'll get yourself in a lot of trouble and I took the gun away from him. And he swear to the Good Lord he was going home and I gave it back to him. And I went on out the door behind John and them and I looked back and Jimmy Scott was coming across the field and he say, I'm going to kill you, and he out with his gun and shot John.
Q. All right, go ahead.
A. Then Mary Ellen come back after she heard the shot and got down on John and told John to get up. I said, John is dead, he can't get up. Then Jimmy told me to get out of the way, I got one of 'em, I might as well to get the other one. Then me and Mary Ellen started to running. We ran back to the road and Jimmy Scott was still firing at us and I was begging him not to shoot me. Then I asked him for the gun and he gave it to me.
Q. How many times did he fire?
A. He killed John Dillard with two bullets and he shot at me and Mary Ellen twice across the field and he shot three more times when we got to the road.
According to the testimony of all the state's witnesses, the deceased had no weapon and there was none found at the scene of the crime.
The defense presented a different factual situation. The defendant testified that Mrs. Dillard and the defendant had been seeing each other for more than two years and that they had engaged in sexual intercourse on many occasions. The defendant testified that after he left the White home he started walking to his car and John Dillard stepped in front of him and said he wanted to show him something. Dillard then grabbed the defendant's shirt and as the defendant raised his hand, Dillard cut defendant on the hand with a knife. He stated that he broke free from Dillard and started running across the field with the deceased following saying he wanted to show him something. Scott testified that he shot once to scare the deceased, but Dillard kept coming and he fired again and hit the deceased and that the deceased died from the wound that he inflicted.
Appellant argues four propositions for the reversal of this case. Proposition I is that the trial court erred in forcing appellant to trial, when it was apparent that his defense attorneys did not have a fair opportunity to prepare for trial. The record in this case reflects that on the day after appellant killed John Dillard, an attorney was appointed to represent him. Thereafter a preliminary hearing was had and a record made of these proceedings. On October 8, 1971, his attorney, Willard L. *378 McIlwain, who is a State Senator, filed a motion requesting, among other things, that another attorney be appointed to assist him in the defense of appellant. On the same day, the court sustained the motion and appointed the Honorable Kenner Ellis, the next attorney on the list for appointments in a felony case.
After appellant was indicted at the November 1971 term of the court, the court sustained a motion by appellant to continue the cause until the January 1972 term of court. On January 14, 1972, the court fixed February 3, 1972, as the date for the trial of appellant. On January 25, 1972, Senator McIlwain filed on behalf of appellant a motion for a continuance based upon Mississippi Code 1942 Annotated, Section 1649.5 (Supp. 1972). On the same day the court overruled the motion for a continuance. On February 2, 1972, Senator McIlwain filed another motion for a continuance. This motion set up that on February 1, 1972, the National Heart Foundation had nurses and doctors checking the blood pressure of the members of the Legislature and that it was discovered that his blood pressure was 240 over 110, and he was advised to see his personal physician immediately. It was further alleged that he returned to Greenville and was examined by Dr. F.M. Acree. Dr. Acree advised him not to try any lawsuits or do anything that might elevate his blood pressure, and it might be dangerous to his health for him to do these things for the next few weeks. The certificate of the doctor was attached to the motion. In overruling this motion the trial court pointed out that on October 18, 1971, Mr. Ellis had been appointed to assist in the defense of the case, and the testimony taken at the preliminary hearing had been transcribed and was in the hands of the attorneys representing the defendant. It was also pointed out that the case had been continued at the November term of the court at the request of the appellant, that on January 14, 1972, a habeas corpus petition was heard by the court and denied and at that time the case was set for trial on February 3, 1972, and that on January 27, 1972, a special venire had been drawn and summoned. It was also pointed out that Willie Walton, a material eye witness, had been summoned and had come to court from Chicago on three occasions. The court observed and pointed out to the accused that he was entitled to a speedy trial, and he had been in jail without bond since he was arrested. The court was of the opinion that the case contained no extraordinary or unusual questions of law and that the issue involved was relatively simple. The court relieved Senator McIlwain as counsel for the defendant and appointed Mr. Murray Akers to assist Mr. Ellis in the defense. Thereupon Mr. Ellis orally moved the court for a continuance. No evidence was offered in support of this motion, and it was overruled. Appellant urges that the trial court committed fatal error in forcing appellant to trial by counsel who were not fully prepared to defend him. Mr. Ellis had been appointed to assist in the defense of appellant 118 days prior to the date appellant was tried. He had available to him the transcribed testimony taken at the preliminary hearing, he was present and participated in the habeas corpus hearing, and appellant offered no testimony that showed that his counsel was unprepared to try the case. A review of the record reveals that the trial court was correct in its opinion that there were no extraordinary or unusual questions of law involved in the case. The facts, although conflicting, present rather simple issues. The record also reveals that appellant received a fair and impartial trial in which he was ably and vigorously defended. This is demonstrated by the fact that he was only convicted of manslaughter, when the jury would have been justified in finding him guilty of murder. It is well settled that the granting of a continuance is largely within the discretion of the trial court. The refusal to grant a continuance will not be a ground for reversal unless that discretion has been abused, and the court is satisfied that an injustice has resulted therefrom. We cannot say that the court abused *379 its discretion in overruling the motion for continuance. Brown v. State, 252 So.2d 885 (Miss. 1971).
Under Proposition II appellant says that the trial court erred in refusing to grant a continuance until such time as a material witness could be produced on behalf of the defendant. We find no merit in this contention and do not deem it necessary to belabor this point for two reasons: First, appellant is not in position to complain of any error in this regard, because of his failure to comply with the long established rule of this Court governing continuance because of an absent witness. Rush v. State, 254 Miss. 641, 182 So.2d 214 (1966). Second, it is stipulated before the jury that the witness was ill and unable to attend court, but if present in court he would testify that on the morning of August 23, the day after the incident in question he met with the defendant and at the time of the meeting, observed a cut on defendant's right hand between the knuckle of the thumb and the first finger of that hand. It is not contended that if the witness were present he would have testified to any other facts. Cf. Thomas v. State, 61 Miss. 60 (1883).
Proposition III is that the trial court erred in refusing to sign the order allowing the special bill of exceptions and more particularly the court committed reversible error assigned in the special bill of exceptions. It appears from the argument on this point that the special bill of exceptions referred to was presented to the court in regard to a habeas corpus proceeding heard by the court on January 14, 1972. That proceeding was a new suit brought by the appellant to enforce a civil right against those holding him in custody, and in no way had anything to do with the trial on the merits. When the court denied the petition for writ of habeas corpus, appellant's remedy was to appeal. Appellant cites no authority to the effect that his conviction could be reversed because of denial of a writ of habeas corpus, and indeed, none can be found. While we admire the resourcefulness of counsel, this assignment of error is wholly without merit.
Finally, under Proposition IV the appellant urges that the trial court erred in refusing to require the state's attorney to divulge to counsel for the defendant statements made by a material witness before the grand jury which would tend to exculpate the defendant, and thereafter, refusing to grant a mistrial or continuance for six months until the grand jury proceedings were no longer secret.
The record reflects that on the morning of the trial, counsel for appellant moved the court to order the state to produce for defendant's inspection anything and everything that was in the files of the state which would exculpate the defendant or have a direct bearing on the punishment. The court ordered the state to furnish counsel for defendant anything it might have in the way of or nature of physical evidence, confession, if any, made by the defendant, and other relative data. This the state agreed to do. It is alleged that at the habeas corpus hearing the county attorney stated that Mary Dillard, the wife of the deceased, had changed her testimony before the grand jury and that she was hostile to the state. There is nothing in the record to support this allegation other than statement of defense counsel. Appellant offered no testimony to support his allegations that the county attorney had made such a statement. When the state offered Mary Dillard as a witness, appellant objected to her testifying for the state. This objection, of course, was overruled. The defense then moved the court to enforce the order of the previous day requiring the state to produce for the benefit of the defense any statement that the witness had made before the grand jury which would tend to exculpate the defendant or which would be inconsistent with the testimony which she was about to give on behalf of the state. A motion was made for the issuance of a subpoena instanter for the county attorney, who did not participate in the trial of this case. The court in ruling on the *380 motion pointed out that counsel knew, as well as the court knew, that no record was made of the grand jury proceeding and that no matter what a witness may testify to on one occasion, such witness may testify differently on another. The court observed that the witness had been available for counsel for defendant to question. The court also refused to grant the request for a subpoena instanter for the county attorney, giving as the reason that the grand jury proceedings were secret, and the county attorney was prohibited by statute from testifying as to what took place in the grand jury room for a period of six months.
When Mary Dillard testified as a witness for the state she was cross-examined extensively to the testimony she had given at the preliminary hearing. Counsel for appellant never attempted to lay the required predicate to contradict her to what she had testified to before the grand jury. In the absence of a proper predicate being laid, appellant was not entitled to introduce evidence to contradict her by the testimony given before the grand jury. Furthermore, under the provisions of Section 1790, Mississippi Code 1942 Annotated (1956), appellant was at liberty to subpoena one or more members of the grand jury to contradict the witness, if a proper predicate had been laid. We find no indication in the record that the state was in any way attempting to or did suppress any evidence favorable to the appellant. Appellant filed a motion for a new trial, but again offered no evidence in support of these contentions. Therefore, it is apparent from what has been said, that this assignment of error is without merit.
We are convinced after a careful and painstaking examination of the record in this case that the appellant received a fair and impartial trial in which he was represented by able and resourceful counsel, who demonstrated that they were fully prepared to defend him, and who were careful to preserve every right to which appellant was entitled.
There being no reversible error in this case, it must be and is affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, ROBERTSON and BROOM, JJ., concur.