# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-KA-00202-COA

**ONEALIUS TERRELL SHEPPARD**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/18/1998 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 09/17/1998: MANSLAUGHTER: SENTENCED TO SERVE A TERM OF (20) YEARS IN THE CUSTODY OF THE MDOC. |
| DISPOSITION: | AFFIRMED - 05/23/2000 |
| MOTION FOR REHEARING FILED: | 5/31/2000; denied 8/1/2000 |
| CERTIORARI FILED: | 8/7/2000; granted 9/28/2000 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., LEE, AND MOORE, JJ.

McMILLIN, C.J., FOR THE COURT:

¶1. Onealius Sheppard was convicted of manslaughter by a jury in the Circuit Court of Hinds County. He has appealed his conviction to this Court alleging that (a) the trial court seriously prejudiced his defense by excluding evidence indicating the presence of marijuana in the home where the victim was killed, (b) the court erred in granting a jury instruction that the jury could consider Sheppard's flight as evidence of guilty knowledge, (c) the court erred in refusing to instruct the jury on defense of another, and (d) that remarks by the prosecuting attorney in summation were so inflammatory as to deny him a fundamentally fair trial. We find no error in the trial court's evidentiary ruling or its handling of jury instructions. While we find the complained-of remarks by the prosecution during closing argument to be improper and regrettable, we do not find them to be so prejudicial as to undermine the overall integrity of the trial process and we decline to reverse Sheppard's conviction on that ground. Therefore, we affirm the conviction for reasons we will now discuss in greater detail.

**I.**

## Facts

¶2. There is no dispute that the victim, Emanuel Fox, was killed by a bullet wound to his abdomen while he stood on the porch outside the front door of his home. There is further no real dispute that Sheppard fired the shot that proved fatal to Fox. However, there is little other common ground between the versions of events offered by the State and by the defense.

¶3. The State contended that Sheppard and his companion, Larry Womack, came to Fox's home in the early morning hours of September 2, 1997 and that Womack became involved in a physical altercation with the victim. When the noise of the fray awoke Fox's brother, John, and he came to his brother's aid, Womack separated himself from Fox, jumped off the front porch, turned and fired several shots in Fox's direction. At the same time, Sheppard, who had been standing in the front yard, fired an additional shot that struck Fox in the side.

¶4. Sheppard's theory of the case, on the other hand, was that he and Womack came to Fox's home to make a marijuana purchase. Sheppard waited outside while Womack went in to consummate the transaction. Womack indicated, however, that he had been in a prior dispute with the Fox brothers. When he entered the home, he observed a supply of marijuana in plain view; however, when he expressed a desire to purchase some of the drug, John Fox left the room rather than filling Womack's purchase request from the plainly visible quantity of the drug. This caused Womack to become uneasy and he got up to depart; however, Emanuel attempted to physically restrain him. At that point, John Fox re-entered the room armed with a rifle or a shotgun, but did not fire it in apparent concern over striking his brother by accident. Fearing for their safety, Womack and Sheppard proceeded to fire their weapons in the direction of the house in self-defense while in the process of fleeing the scene.

## II.

### The First Issue: Evidence of Marijuana

¶5. On the State's motion before the trial commenced, the trial court excluded evidence of the possible presence of marijuana in the Fox residence until such time as the defense could establish its relevance from other evidence. Sheppard resisted the motion, saying it hindered him in presenting his defense that the killing was the result of a drug-related dispute in which the victim was the aggressor. The trial court's ruling appeared to be based, in part, on the proposition that the defendant might be unable to lay a proper evidentiary predicate for his theory of the defense since it depended heavily on the testimony of his co-indictee, Larry Womack. Womack had not yet been tried and his availability as a witness was questionable because of concern that he would invoke his Fifth Amendment right against self-incrimination and refuse to testify.

¶6. When the victim's brother testified, Sheppard's counsel made a proffer of possible cross-examination outside the presence of the jury, in which he made several inquiries concerning the witness's knowledge of the presence of drugs and drug-related paraphernalia inside the home. As to each inquiry, the witness denied having any such knowledge. Also, when an investigating detective who took Sheppard's statement testified, the trial court prevented defense counsel from interrogating the detective about portions of the statement concerning the alleged drug-related nature of the dispute between the Fox brothers on the one hand and Sheppard and Womack on the other.

¶7. The sole witness for the defense was Sheppard's co-indictee, Womack, who, as it turned out, did not invoke the protections of the Fifth Amendment. He testified to facts consistent with Sheppard's theory of the case, including the details of the alleged dispute related to marijuana and the fact that Womack observed a supply of what he believed to be marijuana in plain sight. Womack thus became the source of evidence supporting all aspects of Sheppard's theory of the case.

¶8. Nevertheless, despite being able to fully develop his defense theory through Womack's testimony, Sheppard continues to insist that he was severely hampered in presenting his defense by the limitations imposed on his right to cross examine the prosecution's witnesses on the same subject.

¶9. A defendant is entitled to fully develop the facts surrounding the alleged crime in order to fairly present his defense. *Terry v. State,* 718 So. 2d 1115 (¶28) (Miss. 1998). Sheppard's theory of the defense throughout the trial was that he and Womack went to the Fox residence to purchase marijuana and that John and Emanuel Fox used the opportunity of their presence to attempt to settle a prior drug-related grievance. In turn, according to Sheppard's theory, his own reaction in firing his pistol was merely a defensive maneuver intended to protect himself and his companion from the Fox brothers' aggression.

¶10. This appears a plausible defense and we can discover no reason why the defendant should not have been permitted to develop facts consistent with that defense, including during cross examination of the State's witnesses. The State certainly cannot argue that Sheppard's defense was manufactured out of the whole cloth for the sole purpose of falsely painting the victim as a drug dealer unworthy of the protections of the law. During the State's own criminal investigation, officers discovered and seized the green leafy substance from Fox's home that arguably was the same substance Womack viewed on the night of the shooting and which he believed to be a supply of marijuana. Additionally, the State was fully aware that scales of the sort typically used by drug dealers were found in the victim's residence.

¶11. While we agree that evidence that the victim may have been involved in drug trafficking, standing alone, may have been inadmissible as having no relevance and as tending to improperly prejudice the jury against the victim, once that information became relevant to the defendant's theory of the case, we are satisfied that it was admissible to aid the jury in reaching a full understanding of the facts of the case as advanced by the defendant.

¶12. Nevertheless, not every error in ruling on the admissibility of evidence requires the reversal of a criminal conviction. Miss. R. Evid. 103(a); *Pham v. State,* 716 So. 2d 1100, 1102 (Miss. 1998); *Newsom v. State,* 629 So. 2d 611, 614 (Miss. 1993). So long as the defendant was ultimately afforded a fair opportunity to fully develop his defense, the wrongful exclusion of some helpful evidence is not fatal. We must, therefore, look to the question of whether the evidence excluded by the trial court so fundamentally undermined Sheppard's ability to receive a fair trial as to constitute a miscarriage of justice.

¶13. Based on the defendant's own proffer, the only harm incurred to the defense by the refusal to permit cross-examination of the victim's brother was that the jury was not permitted to hear the witness deny that he knew there was marijuana and drug paraphernalia in his brother's residence. This witness apparently would not have denied the presence of such materials, but only disclaimed any personal knowledge of such matters. Because evidence of the presence of drugs and drug-related materials was available to the defendant from another source - a source which the defendant ultimately failed to utilize - we do not find that the exclusion of the victim's brother's subjective knowledge (or alleged lack thereof) on the subject to have any particular probative value helpful to the defense and find its exclusion to be harmless error. *Pham,*

716 So. 2d at 1102.

¶14. At this point in consideration of this issue, it is important to recall that the trial court did not irrevocably exclude evidence concerning drug-related matters, but only barred such matters until the defendant was able to demonstrate their relevance. Again, we take the view that the better course would have been to permit Sheppard to develop his theory of the case by a thorough cross-examination of the State's witnesses on the subject since it was beyond dispute that actual evidence consistent with Sheppard's defense theory existed and was, in all likelihood, known to the State's witnesses. Nevertheless, even under the limitations imposed by the trial court, it appears beyond reasonable dispute that, after Womack's testimony, a proper predicate had been made for the admission of additional evidence consistent with the scenario spelled out by Womack in his testimony. Despite this, Sheppard made no attempt to recall the investigating officer to develop the fact that a vegetable substance resembling marijuana and a set of scales were retrieved from Fox's residence after his death. Thus, we find left unanswered by the defense's own failure to call available witnesses the question of whether the trial court would have found that Womack's testimony laid the proper predicate for the admission of evidence that, until that time, had been excluded. Certainly, it is not unusual for evidence to be excluded until its relevance has been established through the laying out of the proper predicate. *Scott v. State,* 274 So. 2d 376, 380 (Miss. 1973). It is also equally certain that a trial court cannot be put in error as to a matter on which it was not permitted the opportunity to rule. *Evans v. State,* 725 So. 2d 613 (¶384) (Miss. 1997).

¶15. In this case, to the extent that Sheppard was not permitted to put before the jury evidence that a possible supply of marijuana and drug-related paraphernalia were recovered from the victim's residence - evidence which would, to some extent, tend to corroborate the defendant's version of events - we find that his failure to attempt once again to admit the evidence once a predicate had been laid through Womack's testimony to be fatal to his objection concerning its exclusion.

### III.

### The Second Issue: A Flight Instruction

¶16. Sheppard claims reversible error in the trial court's decision to grant the State a requested instruction that flight could be considered as probative of guilt. Sheppard argues that he explained his attempted flight when officers came to arrest him by proving that there was a previous outstanding arrest warrant for him related to another crime and that his flight was based on his knowledge of that warrant. It is true that, in order for evidence of flight to be probative of guilt, the flight must be unexplainable but for the defendant's own guilty knowledge. *Warren v. State,* 709 So. 2d 415 (¶21-23) (Miss. 1998). The Mississippi Supreme Court has said, once an explanation for the flight has been presented, it is inappropriate to give the jury a flight instruction. *Banks v. State,* 631 So. 2d 748, 751 (Miss. 1994). However, that court has also said that, for purposes of determining the propriety of a flight instruction, implausible explanations are the equivalent of no explanation. *Reynolds v. State,* 658 So. 2d 852, 856 (Miss. 1995). In this case, an arresting officer testified that he explicitly informed Sheppard, prior to his attempt to flee, that he was being placed under arrest for the murder of Emanuel Fox. To the extent that the jury found the testimony of the arresting officer credible, Sheppard's alternate explanation of his flight became implausible. The jury is charged with assessing the credibility of the witnesses and determining what weight to assign any particular aspect of the evidence. *Finley v. State,* 725 So. 2d 226 (¶32) (Miss. 1998). In this case, we think there was sufficient evidence presented to support the giving of a flight instruction with the jury having the

responsibility to determine which version of the reasons for Sheppard's flight it found credible and then giving the evidence of flight its appropriate weight in the decision process.

## IV.

### The Third Issue: Self Defense

¶17. Sheppard claims that the jury was not adequately instructed as to self-defense because of the trial court's refusal to grant an instruction that included defense of another. This was apparently based on the proposition that Sheppard, in firing his weapon, was attempting to defend, not only his own safety, but that of his companion, Larry Womack. Sheppard was given a self-defense instruction which did not mention defense of another as an alternate theory. It is not enough that an instruction accurately state the law; there must be an evidentiary basis for every instruction given to the jury. *Terry v. State,* 718 So. 2d 1115 (¶48) (Miss. 1998). In this case, there is no evidence that would permit a reasonable inference by the jury that any shot fired by Sheppard was intended to protect Womack or any other person (besides Sheppard himself) from harm. Only by taking Womack's testimony in its best possible light insofar as Sheppard is concerned, can it be said that a self-defense instruction related to Sheppard's efforts to protect himself from harm was warranted. It was not error to decline to extend the theory of self-defense to the related concept of defending another on this evidence.

## V.

### The Fourth Issue: Inflammatory Summation

¶18. During summation, the prosecuting attorney engaged in a strenuous attack on Womack's credibility. Ultimately, he challenged the jurors that, if they chose to believe Womack's version of events, they should telephone him with their reasons so that he could, in turn, explain the verdict to the family of the victim. Defense counsel's objection to this line of summation was overruled; however, after the objection, the prosecution did not persist in continuing the same argument for any significant time.

¶19. We find this argument improper. On its face, it can serve no legitimate purpose other than to suggest to the jury that it was somehow accountable to the prosecution and the victim's family for its decision and that jurors could be, or at least ought to be, required to justify a verdict of not guilty. An independent jury, uninfluenced by outside pressures or prejudices, charged to determine the guilt or innocence of one accused of criminal conduct based solely on the evidence presented by the prosecution, sits as one of the cornerstone concepts of our judicial system. Any attempt to sway the outcome of the case by inspiring feelings of sympathy for the victim serves only to divert the jury from its true purpose. *Williams v. State,* 445 So. 2d 798, 808-809 (Miss. 1984). Any attempt to intimidate or pressure the jury by suggesting that the jurors might be called upon after returning a verdict to explain themselves likewise has no place in the criminal judicial process. Such improper appeals to the jury's sympathies, passions or fears ought to be avoided by the State acting through its prosecuting attorneys since the proper duty of the prosecution is, after all, the pursuit of a just verdict and not necessarily a conviction. *See McCaskill v. State,* 227 So. 2d 847, 852 (Miss. 1969).

¶20. Though we condemn this form of argument in no uncertain terms, we nevertheless observe the brevity of the remarks and conclude that, improper though the remarks were, they did not so undermine the integrity of the trial as to require us to set aside the jury's verdict. *See Williams,* 445 So. 2d at 808-809*;*

*Turner v. State,* 732 So. 2d 937 (¶73) (Miss. 1999). The case, as a whole, was vigorously tried by both sides. The competing versions of the facts of the case were fairly presented to the jury for decision. The fact witnesses for both sides were substantially tested by lengthy and searching cross-examination from able attorneys. The jury was then fully instructed on the applicable law and was, in fact, admonished by the trial court in its instructions that the argument of counsel did not constitute evidence to be considered in reaching a verdict. On balance, we remain satisfied that the jury acted on its charge to deliberate the outcome of the case based on its resolution of the disputed issues of fact presented to it for resolution. While condemning such evident appeals to the passions and prejudices of the jury, we nevertheless decline to reverse the verdict returned in this vigorously-tried case based solely on the assertion that the jury was swayed from its proper mission by the prosecution's inflammatory remarks in summation.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT WRITTEN OPINION.**